**United States District Court**
**Middle District of Florida**
**Tampa Division**

DONNIE NEGREANU, individually
and on behalf of all those similarly
situated,

          Plaintiff,

v.                                        No. 8:22-CV-02421-CEH-SPF

STARBUCKS CORPORATION, a
Washington Corporation,

          Defendant.

_____

## <u>DEFENDANT'S MOTION TO DISMISS</u>
## <u>PURSUANT TO FED. R. CIV. P. 12(b)(6)</u>

Minh N. Vu (*Pro hac vice*)
SEYFARTH SHAW LLP
975 F St NW
Washington, DC 20004
Tel.: (202) 828-5337
mvu@seyfarth.com

Michael E. Steinberg (*Pro hac vice*)
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 1200
Boston, MA 02210
Tel.: (617) 946-8316
msteinberg@seyfarth.com

Kevin Young
FL Bar No.: 114151
SEYFARTH SHAW LLP
1075 Peachtree Street, NE
Atlanta, GA 30309
Tel.: (404) 885-1500
kyoung@seyfarth.com

# TABLE OF CONTENTS

**Page**

I.  Introduction ......................................................................................................... 1

II.  Factual Allegations ............................................................................................. 3

III.  Legal Standard ................................................................................................... 4

IV.  Argument ............................................................................................................ 5

    A.  The Complaint Fails to Establish a *Prima Facie* Case of
        Discrimination Under Title III of the ADA .............................................. 6

        i.  The Complaint Does Not Plausibly Allege Plaintiff is
            Disabled. ....................................................................................... 6

        ii.  The ADA Does Not Require Public Accommodations to
             Sell Accessible or Special Goods, Nor Does It Dictate
             Pricing For Such Goods. ............................................................. 10

        iii.  The Price Charged By Starbucks For Non-Dairy Milk is
              Not An Unlawful Surcharge. ...................................................... 16

    B.  Plaintiff's FCRA Claim Fails For the Same Reasons as the Title
        III Claim, and For Failure to Exhaust Administrative
        Remedies. ................................................................................................. 19

    C.  Plaintiff's Unjust Enrichment/Restitution Claim Fails Because
        He Received Value For Any Payments He Made to Starbucks. ........ 21

    D.  Dismissal of This Lawsuit Should be Without Leave to Amend
        Because Amendment Would Be Futile ................................................. 23

V.  Conclusion ........................................................................................................ 24

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.L. by & through D.L. v. Walt Disney Parks & Resorts US, Inc.*,
469 F. Supp. 3d 1280 (M.D. Fla. 2020), *aff'd sub nom. A. L. by & through D.L. v. Walt Disney Parks & Resorts U.S., Inc.*, 50 F.4th 1097 (11th Cir. 2022) .................................................................................. 11, 12

*A.L. by & through D.L. v. Walt Disney Parks & Resorts US, Inc.*,
900 F.3d 1270 (11th Cir. 2018) .......................................................... 6, 7, 12

*Abadi v. Walt Disney World Parks & Resorts*,
338 So. 3d 1101 (Fla. Dist. Ct. App. 2022) ...................................... 19, 20

*Am. Safety Ins. Serv., Inc. v. Griggs*,
959 So.2d 322 (Fla. Dist. Ct. App. 2007) ............................................... 22

*Anderson v. Macy's, Inc.*,
943 F. Supp. 2d 531 (W.D. Pa. 2013) ........................................ 16, 17, 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................ 3, 4, 5

*Baptista v. JPMorgan Chase Bank, N.A.*,
640 F.3d 1194 (11th Cir. 2011) ............................................................... 22

*Chaparro v. Carnival Corp.*,
693 F.3d 1333 (11th Cir. 2012) ................................................................. 5

*Cockrell v. Sparks*,
510 F.3d 1307 (11th Cir. 2007) ............................................................... 23

*Dare v. Cal.*,
191 F.3d 1167 (9th Cir. 1999) .......................................................... 17, 18

*Doe v. Mut. of Omaha Ins. Co.*,
179 F.3d 557 (7th Cir. 1999) ...................................................... 11, 12, 13

*Doe v. Samford Univ.*,
29 F.4th 675 (11th Cir. 2022) ........................................................... 4, 16

i

*Dulaney v. Miami-Dade Cnty.*,
  481 F. App'x 486 (11th Cir. 2012) ................................................................. 6

*Fin. Sec. Assur., Inc. v. Stephens, Inc.*,
  500 F.3d 1276 (11th Cir. 2007) ................................................................. 5

*Ford v. Schering-Plough Corp.*,
  145 F.3d 601 (3d Cir. 1998) ................................................................. 11

*Fraser v. Goodale*,
  342 F.3d 1032 (9th Cir. 2003) ................................................................. 8, 9

*Gaston v. Bellingrath Gardens & Home, Inc.*,
  167 F.3d 1361 (11th Cir. 1999) ................................................................. 7

*Holly v. Clairson Indus., L.L.C.*,
  492 F.3d 1247 (11th Cir. 2007) ................................................................. 19

*Hustvet v. Allina Health Sys.*,
  910 F.3d 399 (8th Cir. 2018) ................................................................. 8, 10, 15

*Karczewski v. DCH Mission Valley LLC*,
  862 F.3d 1006 (9th Cir. 2017) ................................................................. 11

*Land v. Baptist Med. Ctr.*,
  164 F.3d 423 (8th Cir. 1999) ................................................................. 9

*Lenox v. Healthwise of Ky., Ltd.*,
  149 F.3d 453 (6th Cir. 1998) ................................................................. 11

*Love v. Marriott Hotel Servs., Inc.*,
  40 F.4th 1043 (9th Cir. 2022) ................................................................. 13

*Meagley v. City of Little Rock*,
  639 F.3d 384 (8th Cir. 2011) ................................................................. 17

*Meeks v. Ocwen Loan Servicing LLC*,
  No. 16-CV-81003, 2016 WL 3999570 (S.D. Fla. July 26, 2016), *aff'd*,
  681 F. App'x 791 (11th Cir. 2017) ................................................................. 16

*Mills v. Giant of Md., LLC*,
  508 F.3d 11 (D.C. Cir. 2007) ................................................................. 9

ii

*Neely v. PSEG Tex., Ltd. P'ship*,
  735 F.3d 242 (5th Cir. 2013) ........................................................................ 7

*Norkunas v. Seahorse NB, LLC*,
  444 F. App'x 412 (11th Cir. 2011) .............................................................. 6

*Pincus v. Am. Traffic Sols., Inc.*,
  333 So. 3d 1095 (Fla. 2022) .......................................................... 3, 21, 22

*Thompson v. Orange Lake Country Club, Inc.*,
  224 F. Supp. 2d 1368 (M.D. Fla. 2002) ................................................... 20

*Thorne v. Bos. Mkt. Corp.*,
  469 F. Supp. 3d 130 (S.D.N.Y. 2020) ...................................................... 12

*Wachovia Bank, N.A. v. United States*,
  455 F.3d 1261 (11th Cir. 2006) ................................................................ 15

*Weyer v. Twentieth Century Fox Film Corp.*,
  198 F.3d 1104 (9th Cir. 1999) .................................................................. 11

*Whitesell v. FMS Fin. Mgmt. Servs., LLC*,
  No. 3:18-CV-00496, 2020 WL 2770017 (M.D. Tenn. May 28, 2020) ..................... 8

*Williams v. Eckerd Fam. Youth Alt.*,
  908 F. Supp. 908 (M.D. Fla. 1995) .......................................................... 20

*Wimberly v. Sec. Tech. Grp., Inc.*,
  866 So. 2d 146 (Fla. Dist. Ct. App. 2004) .............................................. 19

*Zongo v. Brott*,
  No. CV 21-407 (NEB/BRT), 2022 WL 2182196 (D. Minn. Mar. 30,
  2022), *report and recommendation adopted*, No. 21-CV-407
  (NEB/BRT), 2022 WL 2181759 (D. Minn. June 16, 2022) ................................. 7, 8

**Statutes**

42 U.S.C. § 12102(1) ....................................................................................... 6

42 U.S.C. § 12102(2)(A) ................................................................................. 7

42 U.S.C. § 12102(2)(B) ................................................................................. 7

iii

42 U.S.C. § 12182(a) .................................................................................. 6

ADA Amendments Act of 2008 ............................................................... 6, 7

ADA Title I.................................................................................................. 8

ADA Title II .............................................................................................. 17

ADA Title III ....................................................................................... passim

Americans with Disabilities Act (ADA) ............................................. passim

FCRA ................................................................................................... passim

Fla. Statutes § 760.11 ............................................................................... 19

Fla. Statutes § 760.11(4) ........................................................................... 20

Rehabilitation Act Section 504 ................................................................... 7

**Other Authorities**

28 C.F.R. pt. 36, App'x C.......................................................................... 14

28 C.F.R. § 36.301 .................................................................................... 17

28 C.F.R. § 36.301(c) .................................................................................. 2

28 C.F.R. § 36.301(c) Title III .................................................................. 17

28 C.F.R. § 36.302 .................................................................................... 14

28 C.F.R. § 36.302(a).................................................................... 13, 14, 15

28 C.F.R. § 36.307 ............................................................................... passim

28 C.F.R. § 36.307(a) ........................................................................... passim

28 C.F.R. § 36.307(c) ........................................................................... passim

29 C.F.R. § 1630.2(j)(ii).......................................................................... 10

*Nondiscrimination on the Basis of Disability by Public Accommodations
    and in Commercial Facilities*, 56 Fed. Reg. 35,544 (July 26, 1991) ......................... 13

Rule 12(b)(6)........................................................................................................... 16

v

## I.  <u>Introduction</u>

Plaintiff's complaint should be dismissed with prejudice and without leave to amend because there is no basis in disability law for this Court to set the prices for beverages sold at Starbucks stores. There is no requirement in the  Americans with Disabilities Act (ADA) or its regulations that public accommodations offer "special foods to meet particular dietary needs," 28 C.F.R. § 36.307(c), such as beverages made with dairy-free milk.  The Eleventh Circuit and other courts to have considered this regulation concur with these principles, as well as the corresponding principle that the ADA does not authorize courts to dictate the pricing for accessible goods sold by a public accommodation.

Despite these well-established legal principles, Plaintiff Negreanu asks this Court to order Starbucks, for lactose intolerant people, to lower its prices for beverages made with non-dairy milk so that they are the same price as beverages made with cow's milk based on two misguided theories:  (1) as a "reasonable modification" of its policy and procedures; and (2) because the higher price of beverages made with non-dairy milk is a prohibited surcharge.  As set forth below, there is no legal basis for Plaintiff's radical position which contradicts the direction contained in 28 C.F.R. § 36.307(a) and (c) and would require millions of businesses to alter their food and beverage offerings and the prices charged.

90557644v.2

ADA Claim.  Plaintiff's claim under Title III of the ADA (Count I) fails for three reasons:  (1) Plaintiff has not pled facts establishing that he has a disability. Specifically, the Complaint contains no facts showing that Plaintiff's lactose intolerance substantially limits a major life activity.  (2)  Even if Plaintiff were a person with a disability, under the ADA and its implementing regulations, Starbucks is not obligated to "alter its inventory to include accessible or special goods" for persons with disabilities, including "*special foods to meet particular dietary needs*."  28 C.F.R. § 36.307(a) and (c) (emphasis added).  Simply put, the ADA does not require Starbucks to sell non-dairy drinks *at all*, let alone dictate the prices at which Starbucks may sell those items to the public.  The obligation to make reasonable modifications to normal policies, practices and procedures, cannot be interpreted in a manner that eviscerates this provision.  (3) The higher price for coffee drinks made with non-dairy milk is not a prohibited surcharge under 28 C.F.R. § 36.301(c) because the ADA does not require Starbucks to sell such drinks in the first place, and the same higher price also applies to non-disabled customers.

FRCA Claim.  Plaintiff's disability discrimination claim under the FCRA (Count II) fails for the same reasons as his ADA claim, as state and Federal courts in Florida have repeatedly held that the same substantive standards apply under both statutes.  Additionally, the FCRA claim fails because the Complaint does

2

not allege that Plaintiff ever filed a charge of discrimination with the Florida Human Rights Commission – a jurisdictional prerequisite to bringing a civil action under the FCRA.

<u>Unjust Enrichment Claim</u>.  The sole basis the Complaint provides for this cause of action is that Starbucks pricing of non-dairy milk drinks violates the ADA and FCRA.  Even if that were true (and it is not), the Florida Supreme Court has recently made clear that an alleged statutory violation alone is insufficient to state a cognizable unjust enrichment claim.  Where, as here, the plaintiff received something of value in exchange for his payment (*i.e.* the beverages he ordered), any unjust enrichment claim fails as a matter of law.  *See Pincus v. Am. Traffic Sols., Inc.*, 333 So. 3d 1095, 1097-98 (Fla. 2022).

For all of the foregoing reasons, and those set forth in more detail *infra*, Starbucks respectfully requests that this Court (1) grant the instant motion and (2) enter an order dismissing the Complaint in its entirety with prejudice.

## II.    **Factual Allegations**[1]

Plaintiff is a resident of Pinellas County, Florida.  Complaint (ECF No. 1) ("Compl." or "Complaint"), ¶20.  He claims to be lactose intolerant and "must

---

[1] As it must, Starbucks assumes for purposes of this motion only that the well-pleaded allegations in the Complaint are true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  In reciting certain facts alleged in the Complaint, Starbucks expressly does not admit their truth.  In the event any part of this litigation survives the instant motion, Starbucks reserves the right to contest, and respond further to, the Complaint's allegations.

90557644v.2

consume drinks that do not contain milk or milk-based products." *Id.*, ¶22. When he consumes milk-based products, he experiences "stomach discomfort, digestive tract inflammation and bowel irregularities." *Id.*, ¶23. Consequently, the Complaint asserts, Plaintiff's lactose intolerance "limits" his "major life activities" of "drinking" and "consuming milk-based products." *Id.*

According to the Complaint, Plaintiff has been ordering "coffee-based and other drinks at Starbucks coffee shops in Florida since at least 2012 to the present." *Id.*, ¶2. When he has done so, he has asked for drinks made with certain non-dairy products that are "vegan or lactose-free," *id.*, ¶23. The Complaint alleges that Starbucks charges customers, including him, between $0.50 and $0.80 extra for those products. *Id.*, ¶¶3, 28, 29.

## III.   Legal Standard

"Familiar principles govern a motion to dismiss for failure to state a claim." *Doe v. Samford Univ.*, 29 F.4th 675, 685 (11th Cir. 2022). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted). "Because the presumption of truth applies only to facts, the court may disregard labels and conclusions couched as factual allegations." *Id.* (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks and alterations omitted). Moreover, "[f]actual allegations that

4

are 'merely consistent with a defendant's liability' fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678) (some internal quotation marks omitted).  In other words, "if allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Id.*

Finally, the Court assesses the Complaint's legal sufficiency through the lens of the required elements of the claims asserted therein.  *See Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282–83 (11th Cir. 2007) (it is "necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory") (internal quotation marks and citations omitted).

## IV.   <u>Argument</u>

As set forth in the Introduction, the Complaint asserts three claims, all resting on the fact that Starbucks charges a different price for drinks made with non-dairy milk than it does for beverages with cow's milk: (1) disability discrimination under Title III of the ADA; (2) disability discrimination under the FCRA; and, (3) unjust enrichment/restitution.  *See* Compl., ¶¶51-82.  Even if the non-conclusory allegations in the Complaint were true, all three claims suffer from fundamental legal and pleading deficiencies, requiring dismissal of the Complaint in its entirety, with prejudice and no leave to amend.

90557644v.2

### A.   The Complaint Fails to Establish a *Prima Facie* Case of Discrimination Under Title III of the ADA.

To state a claim for discrimination under Title III of the ADA, Plaintiff

must prove the following elements: "(1) he is a disabled individual; (2) the

defendants own, lease, or operate a place of public accommodation; and (3) the

defendants discriminated against the plaintiff within the meaning of the ADA."

*Norkunas v. Seahorse NB, LLC*, 444 F. App'x 412, 416 (11th Cir. 2011) (citing 42

U.S.C. § 12182(a)).  As set forth *infra*, the Complaint fails to establish the first

element, *i.e.*, that Plaintiff is disabled within the meaning of the ADA.

Furthermore, even if Plaintiff's allegations did plausibly allege a qualifying

disability, the Complaint does not state an actionable theory of discrimination

under the ADA.

#### i.   The Complaint Does Not Plausibly Allege Plaintiff is Disabled.

"The first element of a Title III claim is that the plaintiff must have a

disability."  *A.L. by & through D.L. v. Walt Disney Parks & Resorts US, Inc.*, 900 F.3d

1270, 1290 (11th Cir. 2018).  The statutory definition of "disability" is "a physical

or mental impairment that *substantially limits* one or more *major life activities*."  *Id.*

(quoting 42 U.S.C. § 12102(1)) (emphases added).

In 2008, Congress amended the ADA via the ADA Amendments Act of

2008 ("ADAAA").  *See Dulaney v. Miami-Dade Cnty.*, 481 F. App'x 486, 489 n.3

(11th Cir. 2012) (reciting legislative history).  "Although the text of the ADAAA expresses Congress's intention to broaden the definition and coverage of the term 'disability,' it in no way eliminated the term from the ADA or the need to prove a disability on a claim of disability discrimination."  *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir. 2013). "In other words, though the ADAAA makes it *easier* to prove a disability, it does not *absolve* a party from proving one." *Id.* (emphases in original).

The ADA provides "a non-exhaustive list of 'major life activities,'" *A.L.*, 900 F.3d at 1290, which includes eating.  *Id.* (quoting 42 U.S.C. § 12102(2)(A)). The ADA also defines "major life activity" to include "the operation of a major bodily function[.]"  42 U.S.C. § 12102(2)(B).   That said, even post-ADAAA, a mere intolerance to, or need to avoid, a particular kind of food item does not constitute a qualifying disability.  Indeed, in a recent case, a federal district court concluded that a plaintiff's claim of lactose intolerance, which allegedly required him to eat dry cereal with his breakfast, did not plausibly state a claim for disability discrimination.  *See Zongo v. Brott*, No. CV 21-407 (NEB/BRT), 2022 WL 2182196, at *9 & n.9 (D. Minn. Mar. 30, 2022), *report and recommendation adopted*, No. 21-CV-407 (NEB/BRT), 2022 WL 2181759 (D. Minn. June 16, 2022).[2]  As the

---

[2] The claim at issue in *Zongo* was for violation of Section 504 of the Rehabilitation Act, but the analysis is equally applicable to claims under Title III.  *See Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999) ("Congress intended for courts to rely on Rehabilitation

court noted in *Zongo*, "courts generally have rejected considering dietary issues even more limiting than an intolerance as constituting a disability."  2022 WL 2182196, at *9 n.9 (citing cases).

Other post-ADAAA courts, too, have concluded that ordinary allergies to food or other substances do not rise to the level of an actionable disability under the ADA.  For example, in *Whitesell v. FMS Fin. Mgmt. Servs., LLC*, No. 3:18-CV-00496, 2020 WL 2770017, at *9 (M.D. Tenn. May 28, 2020), the court concluded that plaintiff's alleged fragrance allergy did not substantially limit major life activity of breathing where she only experienced allergy symptoms "when [] exposed to strong odors and, therefore, only sporadically" and that "such occasional allergic reactions have been found to not substantially limit a major life activity for purposes of the ADA".  Likewise, in *Hustvet v. Allina Health Sys.*, 910 F.3d 399, 411 (8th Cir. 2018), the Eighth Circuit affirmed the dismissal of a case under Title I of the ADA, finding that the plaintiff's "garden-variety allergies to various items that moderately impact her daily living" were "not enough for a reasonable fact-finder to conclude she is disabled."  *See also Fraser v. Goodale*, 342 F.3d 1032, 1040 (9th Cir. 2003) (stating, in pre-ADAAA case, that a person who cannot eat a specific type of food item would not be substantially

---

Act cases when interpreting similar language in the ADA.") (internal quotation marks and citation omitted).

limited in major life activity of eating);  *Land v. Baptist Med. Ctr.*, 164 F.3d 423 (8th Cir. 1999) (in pre-ADAAA case, the Eighth Circuit concluded that the plaintiff's allergy to peanuts and their derivatives did not substantially limit her ability to eat because she did not have an allergic reaction to any other kinds of food).

Against that backdrop, the Complaint's allegations of disability are glaringly deficient.  Plaintiff alleges that he is lactose intolerant, Compl., ¶22, and that the condition "limits" the major life activities of "drinking" and "consuming milk-based products."  *Id.*, ¶23.  As an initial matter, consuming a particular kind of food item is not a major life activity under the ADA.  *Fraser*, 342 F.3d at 1040 (holding that, while eating is a major life activity, "[E]ating specific types of foods, or eating specific amounts of food, might or might not be a major life activity. If a person is impaired only from eating chocolate cake, he is not limited in a major life activity because eating chocolate cake is not a major life activity."). The Complaint in this case contains no allegation that Plaintiff is unable to eat and drink any food/beverage other than cow's milk.  Being unable to consume one type of food, out of the many thousands of other foods/beverages in the world, is not a substantial limitation on Plaintiff's ability to eat and/or drink.

Moreover, it bears emphasis that lactose intolerance is a highly common condition affecting "30 to 50 million Americans."  *Mills v. Giant of Md., LLC*, 508 F.3d 11, 12 (D.C. Cir. 2007).  The Complaint thus contains no facts giving rise to a

90557644v.2

plausible inference that, "as compared to most people in the general population[,]" 29 C.F.R. § 1630.2(j)(ii), Plaintiff is substantially limited in his ability to drink, eat, or engage in any other major life activity.  Accordingly, the Complaint's allegations make clear that Plaintiff's lactose intolerance falls squarely within the realm of a "garden-variety allerg[y]" that – at most – "moderately impact[s] h[is] daily living."  *Hustvet*, 910 F.3d at 411.  Because the Complaint does not plausibly allege facts that, if true, would establish that Plaintiff has a "disability" within the meaning of the ADA, his Title III claim must be dismissed.

> ii.  ***The ADA Does Not Require Public Accommodations to Sell Accessible or Special Goods, Nor Does It Dictate Pricing For Such Goods.***

Title III does not regulate the kinds of products sold by a place of public accommodation and, in particular, does not require them to sell "accessible or special goods."  28 C.F.R. § 36.307(a).  The DOJ's regulations provide that the statute "does not require a public accommodation to alter its inventory to include accessible or special goods that are designed for, or facilitate use by, individuals with disabilities."  *Id*.  The regulation goes on to elaborate that such "accessible or special goods" specifically include "special foods to meet particular dietary needs."  28 C.F.R. § 36.307(c).  As the Middle District of Florida recently held, and the Eleventh Circuit affirmed:

90557644v.2

> *The common sense of the statute is that the content of the goods or services offered by a place of public accommodation is not regulated.* A camera store may not refuse to sell cameras to a disabled person, but it is not required to stock cameras specifically designed for such persons. Had Congress purposed to impose so enormous a burden on the retail sector of the economy and so vast a supervisory responsibility on the federal courts, we think it would have made its intention clearer and would at least have imposed some standards. It is hardly a feasible judicial function to decide whether shoe stores should sell single shoes to one-legged persons *and if so at what price,* or how many Braille books the Borders or Barnes and Noble bookstore chains should stock in each of their stores.

*A.L. by & through D.L. v. Walt Disney Parks & Resorts US, Inc.*, 469 F. Supp. 3d 1280, 1305 (M.D. Fla. 2020) (emphases added), *aff'd sub nom. A. L. by & through D.L. v. Walt Disney Parks & Resorts U.S., Inc.*, 50 F.4th 1097 (11th Cir. 2022) (quoting *Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 560 (7th Cir. 1999)).

Consistent with the principles set forth in 28 C.F.R. § 36.307, numerous other courts have also held that a public accommodation is not required under the ADA to change the mix of goods that it stocks and sells to include accessible or special goods. *See, e.g., Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1014 (9th Cir. 2017) ("…[P]laces of public accommodation are generally not required to alter their inventories by manufacturing or ordering specialty goods . . .") (internal quotation marks and citation omitted); *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1117 n.77 (9th Cir. 1999); *Doe*, 179 F.3d at 559-60; *Lenox v. Healthwise of Ky., Ltd.*, 149 F.3d 453, 456-57 (6th Cir. 1998); *Ford v.*

11

*Schering-Plough Corp.*, 145 F.3d 601, 613 (3d Cir. 1998); *Thorne v. Bos. Mkt. Corp.*, 469 F. Supp. 3d 130, 143 (S.D.N.Y. 2020) ("The Department of Justice's [] implementing regulations clearly state that Title III of the ADA 'does not require a public accommodation to alter its inventory to include accessible or special goods that are designed for, or facilitate use by, individuals with disabilities'" including "'special foods to meet particular dietary needs'") (quoting 28 C.F.R. § 36.307(a), (c)).

Courts have also held that the ADA does not dictate pricing for accessible goods.  As this Court noted in the *A.L.* decision which was affirmed by the Eleventh Circuit:  "Had Congress purposed to impose so enormous a burden on the retail sector of the economy and so vast a supervisory responsibility on the federal courts, we think it would have made its intention clearer and would at least have imposed some standards. It is hardly a feasible judicial function to decide whether shoe stores should sell single shoes to one-legged persons *and if so at what price*."  *A.L.*, 469 F. Supp. 3d at 1305 (emphasis added) (internal quotation marks and citation omitted).  The Seventh Circuit took the same position in *Doe v. Mutual of Omaha Insurance Company*, 179 F.3d 557 (7th Cir. 1999).  In that case, the plaintiff argued that the defendant's insurance policy's lesser benefits for certain medical conditions violated the ADA because it discriminated against policy holders with those conditions.  The Seventh Circuit

disagreed, finding that the insurer had no obligation to offer equivalent policy limits for these conditions at the same price because "a policy with a $25,000 limit is a different product from one with a $1 million limit, just as a wheelchair is a different product from an armchair." *Id.* at 560.  In other words, the court would not require the insurer to provide an accessible product for the same price as a non-accessible product -- precisely what Plaintiff seeks in this case.

In short, Title III of the ADA does not require Starbucks, or any other retail establishment, to sell beverages with non-dairy milk — or any other product, for that matter, let alone dictate the price at which it must sell those products. Rather, as DOJ stated in its official commentary to § 36.307, "[t]he purpose of the ADA's public accommodations requirements is to ensure accessibility *to* the goods offered by a public accommodation, not to alter the nature or mix of goods that the public accommodation has typically provided."  *Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities*, 56 Fed. Reg. 35,544, 35,571 (July 26, 1991) (emphasis added).[3]

In the face of 28 C.F.R. § 36.307, Plaintiff claims that Starbucks is required to lower its prices for beverages made with dairy-free milk for the lactose intolerant under 28 C.F.R. § 36.302(a), which requires public accommodations to

---

[3] *See Love v. Marriott Hotel Servs., Inc.*, 40 F.4th 1043, 1047 (9th Cir. 2022) (granting deference to DOJ's commentary to its ADA Title III regulations).

"make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods…to individuals with disabilities, unless the public accommodation can demonstrate that making the modifications would fundamentally alter the nature of the goods…."  28 C.F.R. § 36.302(a).

That general regulation cannot trump 28 C.F.R. § 36.307.  In fact, the DOJ made clear in its 1991 commentary -- which accompanied the issuance of both § 36.302(a) and § 36.307 -- that the reasonable modification requirement of 28 C.F.R. § 36.302(a) does not require the provision of "special goods that are designed for, or facilitate use by, individuals with disabilities."  The DOJ stated: "The rule enunciated in § 36.307 is consistent with the 'fundamental alteration' defense to the reasonable modifications requirement of § 36.302."  28 C.F.R. pt. 36, App'x C.  The DOJ added for good measure that "§ 36.302 *would not require* the inventory of goods provided by a public accommodation to be altered to include goods with accessibility features."  *Id.* (emphasis added).  In short, by explicitly including 28 C.F.R. § 36.307, the DOJ established, as a matter of law, that requiring public accommodations to provide special goods is always a fundamental alteration of the goods and services provided by that public accommodation.

The far-reaching consequences of adopting Plaintiff's radical theory further illustrate why DOJ had to include 28 C.F.R. § 36.307 in its regulations.

14

Without Section 36.307, retailers would be barraged with demands to lower prices for goods that are needed or are useful to people with disabilities as a reasonable modification of their pricing policies.  Grocery stores would need to lower their prices for gluten-free products to match the price of products with gluten for shoppers who cannot eat gluten.  They would also have to lower their prices for organic vegetables to match the price for non-organic vegetables for shoppers allergic to pesticides in foods.  Retailers would have to determine whether a shopper has a disability that would qualify them for discounted pricing, as opposed to a "garden variety allergy" that would not.  *Hustvet*, 910 F.3d at 411.  And retailers would face a Hobson's choice: accept claims of disability status from customers at face value (and sell products at reduced prices), or face countless lawsuits in which they would have to litigate a customer's alleged disability and whether the price reduction is a fundamental alteration of the goods being sold.  Courts would be flooded with such lawsuits, in which they would have to determine the appropriate price for foods and other goods needed by people with disabilities.

28 C.F.R. § 36.307 exists to prevent this situation from happening, and 28 C.F.R. § 36.302(a) requiring reasonable modifications to normal policies, practices and procedures cannot be read to require what 28 C.F.R. § 36.307 explicitly says is not required.  *See Wachovia Bank, N.A. v. United States*, 455 F.3d 1261, 1268 (11th

15

Cir. 2006) (in reconciling statutory provisions, court will "try to make them and their near and far kin make sense together, have them singing on the same note, as harmoniously as possible"); *Meeks v. Ocwen Loan Servicing LLC*, No. 16-CV-81003, 2016 WL 3999570, at *4 (S.D. Fla. July 26, 2016), *aff'd*, 681 F. App'x 791 (11th Cir. 2017) ("regulations, like statutes, are interpreted according to the cannons of construction") (internal quotation marks, citations, and alteration omitted).

### iii. The Price Charged By Starbucks For Non-Dairy Milk is Not An Unlawful Surcharge.

Faced with the insurmountable obstacle posed by 28 C.F.R. § 36.307(a) and (c), the Complaint seeks to sidestep the regulation by calling Starbucks pricing for non-dairy milk a "Surcharge" on the lactose intolerant.  Compl., ¶3.  But calling something an unlawful "Surcharge" does not make it so.  *Samford Univ.*, 29 F.4th at 685 (in evaluating Rule 12(b)(6) motions, courts "disregard labels and conclusions") (internal quotation marks and citation omitted).  Starbucks pricing for non-dairy milk is not a prohibited surcharge under well-established jurisprudence.

"In order to evaluate whether a cost constitutes a surcharge that violates Title III of the ADA, a court considers whether it (1) is used to cover the costs of ADA-mandated measures and (2) is … []a charge that nondisabled people would not incur[]."  *Anderson v. Macy's, Inc.*, 943 F. Supp. 2d 531, 545 (W.D. Pa. 2013)

16

(citing, *inter alia*, *Dare v. Cal.*, 191 F.3d 1167, 1171 (9th Cir. 1999)).[4]  In sum, to constitute a "surcharge" that runs afoul of Title III, the cost must be one that (a) the business imposes to cover measures "that are *required*" for it to comply with Title III, 28 C.F.R. § 36.301(c) (emphasis added), and (b) "is imposed *only on* disabled persons."  *Id.* (emphasis added); *see also Dare*, 191 F.3d at 1171.  Here, the Complaint's allegations do not satisfy either prong.

First, as discussed *supra*, under 28 C.F.R. § 36.307(c), Starbucks is not required to sell drinks with non-dairy milk products at all.  The court's analysis in *Anderson* is squarely on point here.  In that case, the plaintiff claimed that Macy's violated Title III of the ADA by charging more for plus-sized clothing. The court found that "Title III does not require a public accommodation to alter its inventory to include accessible or special goods with accessibility features that are designed for, or facilitate use by, individuals with disabilities," so the plaintiff failed to meet the first requirement of the unlawful surcharge analysis. *Anderson*, 943 F. Supp. 2d at 546 (quoting 28 CFR § 36.307 (2000)).   Likewise, in *Meagley v. City of Little Rock*, 639 F.3d 384, 390 (8th Cir. 2011), the Eighth Circuit affirmed the district court's finding that a zoo's decision to charge a scooter rental fee was not an unlawful surcharge under Title II of the ADA because the ADA does not require public accommodations to provide scooters.  *Id.*

---

[4] *See also* 28 C.F.R. § 36.301.

17

Second, Plaintiff fails to meet the second prong of the unlawful surcharge analysis because the Complaint does not allege that the higher price of non-dairy milks is "imposed only on disabled persons[.]"  *Anderson*, 943 F. Supp. 2d at 545. Although the Complaint says that persons with lactose intolerance face this cost, Compl., ¶3, nowhere does it say — nor could it ever say — that Starbucks does not charge other customers the same price for beverages with non-dairy milks. No matter how Plaintiff may try to evade the issue in his pleading, the bottom line is that the cost a business imposes *on all customers* to purchase the same good is not an unlawful "surcharge" under the ADA.  *Dare*, 191 F.3d at 1171 ("If nondisabled people pay the same fee for an equivalent service, the charge to disabled people would not constitute a surcharge on a 'required' measure."); *Anderson*, 943 F. Supp. 2d at 546-47 ("There are no allegations that disabled persons are charged a higher price than non-disabled persons for the same plus-sized clothing, or that only disabled persons wear (or even purchase) plus-sized clothing.").  Thus, in *Anderson*, the court concluded that "the alleged higher cost of plus-sized goods [was] not a 'surcharge' because it [was] not imposed only on disabled persons."  *Id.*

In sum, the price Starbucks charges to all customers for beverages with non-dairy milks — which it is not required to offer in the first place — is not an unlawful "surcharge" under the ADA.

18

**B.      Plaintiff's FCRA Claim Fails For the Same Reasons as the Title III Claim, and For Failure to Exhaust Administrative Remedies.**

In Count II, Plaintiff alleges a claim under the FRCA, based on the same factual allegations that he makes for his claim under Title III of the ADA.  *See* Compl., ¶¶67-75.  *Id.* (asserting reasonable modification and "surcharge" theories under FCRA).

It is well-established that "disability-discrimination claims under the FCRA are analyzed using the same framework as ADA claims."  *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007).  Consequently, courts "consider both claims together."  *Id.  See also Wimberly v. Sec. Tech. Grp., Inc.*, 866 So. 2d 146, 147 (Fla. Dist. Ct. App. 2004) ("Because Florida courts construe the FCRA in conformity with the ADA, a disability discrimination cause of action is analyzed under the ADA.") (citing cases); *Abadi v. Walt Disney World Parks & Resorts*, 338 So. 3d 1101, 1104 (Fla. Dist. Ct. App. 2022) ("Due to their similarities, the FCRA is construed in conformity with the ADA.").  Thus, the FCRA claim fails for all of the reasons discussed in the preceding argument sections pertaining to Plaintiff's Title III claim.  *See* Section IV(A), *supra*.

Moreover, the FCRA claim fails because the Complaint does not allege that Plaintiff ever filed a complaint with the Florida Commission on Human Relations (the "Commission") within 365 days of the alleged violation(s) and exhausted the statute's administrative remedies.  Section 760.11 of the Florida

19

Statutes sets forth an administrative process whereby a complaint must be filed with the Commission, and "[i]f the commission determines that there is reasonable cause to believe that a discriminatory practice has occurred," then an aggrieved person can then file a civil action or request an administrative hearing. *See* Fla. Statutes § 760.11(4).  The statute also states that "[t]he election by the aggrieved person of filing a civil action or requesting an administrative hearing under this subsection *is the exclusive procedure available to the aggrieved person under this act.*"  *Id.* (emphasis added); s*ee also Abadi*, 338 So. 3d at 1103 ("Prior to filing a civil action alleging discrimination in violation of the FCRA, the individual seeking relief must file a complaint with the Florida Commission on Human Relations . . . within 365 days of the alleged violation and exhaust the administrative remedies provided by the FCRA.") (internal quotation marks and citations omitted); *Thompson v. Orange Lake Country Club, Inc.*, 224 F. Supp. 2d 1368, 1374-75 (M.D. Fla. 2002) (explaining administrative process that is a prerequisite to filing a FRCA claim in court).  Plaintiff's failure to file an administrative complaint and exhaust administrative remedies is fatal to his FCRA claim and requires dismissal.  *See Williams v. Eckerd Fam. Youth Alt.*, 908 F. Supp. 908, 911 (M.D. Fla. 1995) (dismissing FRCA claim because the plaintiffs had not alleged that they filed a charge with the Florida Commission on Human Relations).

90557644v.2

**C.**    **Plaintiff's Unjust Enrichment/Restitution Claim Fails Because He Received Value For Any Payments He Made to Starbucks.**

Finally, the Complaint asserts a purported cause of action for "unjust enrichment/restitution."  Compl., ¶¶76-82.  The sole basis for this claim is the alleged illegality (presumably under Title III and the FCRA) of the amounts Starbucks charged in exchange for providing Plaintiff with the beverages he ordered.  *Id.*  The Complaint expressly alleges that the allegedly unlawful payments he made to Starbucks were "in exchange for providing" him with "lactose-free or vegan milk" drinks.  *Id.*, ¶77.  In other words, Plaintiff's unjust enrichment claim rests entirely on his contention that charging an additional amount for such drinks vis-à-vis other drinks violated federal and state discrimination laws.

Under Florida law, an alleged statutory violation is not sufficient to state a claim for unjust enrichment where the defendant "gave value in exchange" for the charge at issue.  *See Pincus*, 333 So. 3d at 1097.  In *Pincus*, the Supreme Court of Florida was asked to determine, on certified questions from the Eleventh Circuit, whether a plaintiff stated a claim for unjust enrichment based on a municipality's charge of a "convenience fee" for making online payments.  *Id.* at 1097.  The plaintiff argued the fee violated certain Florida statutes governing the assessment of traffic penalties and licensure of operators of payment instruments and therefore the retention of the fee entitled him to assert a claim for unjust

21

enrichment.  *Id.* at 1096-97.  The court held that the plaintiff's complaint failed to state an unjust enrichment claim, *even if* the fee violated one or more of the statutes he invoked, because the plaintiff received value in exchange for the fee in the form of the convenience of making payment online.  *Id.* at 1097-98 ("even if the fee is prohibited under one or more of these statutes, [the defendant's] retention of the fee is not inequitable because [the defendant] gave value in exchange").  *See also Baptista v. JPMorgan Chase Bank, N.A.*, 640 F.3d 1194, 1198 n.3 (11th Cir. 2011) (stating that plaintiff's unjust enrichment claim based on alleged illegality of bank's check-cashing fee failed as a matter of law because plaintiff received consideration in the form of check cashing service; "When a defendant has given adequate consideration to someone for the benefit conferred, a claim of unjust enrichment fails.") (quoting *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So.2d 322, 331-32 (Fla. Dist. Ct. App. 2007)).

*Pincus* is controlling here.  The Complaint makes clear that Plaintiff received value in exchange for the additional amounts he paid for his drinks: he obtained the beverages he ordered made with non-dairy milk.  Thus, even if Plaintiff were correct that the differential prices for those drinks were unlawful under Title III or the FCRA (and he is not correct), his unjust enrichment claim would still fail.

22

**D.    Dismissal of This Lawsuit Should be Without Leave to Amend Because Amendment Would Be Futile.**

The Court should not allow Plaintiff to amend the Complaint because doing so would be futile. *See Cockrell v. Sparks*, 510 F.3d 1307 (11th Cir. 2007) (affirming denial of leave to amend complaint). "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Id.* at 1310.

In this case, Plaintiff's ADA claim fails for a number of reasons discussed above, including, but not limited to, the fact that (1) the DOJ regulations and guidance explicitly state that the ADA does not require Starbucks to sell beverages with non-dairy milks in the first instance, let alone dictate their pricing; and, (2) the higher price for non-dairy milks is not a prohibited surcharge under the DOJ's explicit regulations and relevant caselaw. There are no conceivable facts that Plaintiff could add to his Complaint to change the outcome because his ADA claim lacks a legal basis. Likewise, Plaintiff cannot salvage his FCRA claim by amending the pleadings because the legal analysis is the same as for his unmeritorious ADA claim. Plaintiff also cannot change the fact that he did not exhaust administrative remedies before filing. As for the unjust enrichment claim, it is undisputed that Plaintiff received value (*i.e.* beverages with non-dairy milk) for the money he paid Starbucks, and under controlling precedent (*i.e. Pincus*) this fact eviscerates this claim. As with the

23

ADA and FCRA claims, no additional or different facts can transform the unjust

enrichment claim into a meritorious one.

## V.    <u>Conclusion</u>

For the reasons stated herein, Starbucks respectfully requests that this

Court (1) grant its Motion to Dismiss and (2) enter an order dismissing the

Complaint in its entirety with prejudice and no leave to amend.

Dated: December 21, 2022

/s/ Minh N. Vu

Minh N. Vu (*Pro hac vice*)
SEYFARTH SHAW LLP
975 F St NW
Washington, DC 20004
Tel.: (202) 828-5337
mvu@seyfarth.com

Michael E. Steinberg (*Pro hac vice*)
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 1200
Boston, MA 02210
Tel.: (617) 946-8316
msteinberg@seyfarth.com

Kevin Young
FL Bar No.: 114151
SEYFARTH SHAW LLP
1075 Peachtree Street, NE
Atlanta, GA 30309
Tel.: (404) 885-1500
kyoung@seyfarth.com

## Certificate of Service

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF and paper copies will be sent to any persons indicated as non-registered participants on December 21, 2022.

/s/ Minh N. Vu
Minh N. Vu

## Local Rule 3.01(g) Certification

I hereby certify that, on December 14, 2022, I conferred with counsel for Plaintiff by telephone regarding the issues raised in the instant motion.  The parties were unable to reach agreement regarding resolution of all or some of the issues raised in this motion.

/s/ Minh N. Vu
Minh N. Vu

Dated: December 21, 2022

90557644v.2