## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

DONNIE NEGREANU, individually
and on behalf of all those similarly
situated,

Case No.: 8:22-cv-02421-CEH-SPF

                          Plaintiff,

v.

STARBUCKS CORPORATION, a
Washington Corporation,

                          Defendant.

_____

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

This case is about a disabled person and about a giant coffee chain which decided to make billions in profits by charging its customers with a disability an ever-growing surcharge for non-dairy alternatives. This case is about being unable to eat one of the most basic foods, and the price paid for having such a debilitating condition.

Defendant in this case discriminated against Plaintiff, Donnie Negreanu, by levying a surcharge for non-dairy alternatives to milk that Plaintiff has no choice but to pay solely because of his disability. Defendant singles out Plaintiff, and many others with the same disability, and asks them to pay a non-dairy surcharge when it does not impose a surcharge on other similar alternatives. This conduct is at the heart of the protections afforded by the ADA, as amended in 2008, and state discrimination laws.

Plaintiff suffers from lactose intolerance. Lactose intolerance is a chronic and hereditary immune disorder with potentially severe health consequences, impacting

*the major life activity* of eating. Persons with this disability must avoid lactose or exposure to lactose, a sugar found exclusively in milk and milk products like ice-cream, yogurt, cheese, and butter. Lactose intolerance is everything but a "garden-variety allergy." In fact, milk is considered a staple food by the USDA, a basic food that make up a significant portion of a healthy person's diet[1]. Milk is considered as one of the main sources of protein for a person and it can be found in many foods and drinks from coffee-based drinks to smoothies to cheese and butter.[2] A person that suffers from lactose intolerance suffers severe health consequences from exposure to milk and dairy products. This condition significantly impacts the *major bodily function* of digestion.

Plaintiff and all those who are lactose intolerant must order lactose-free or non-dairy milk alternatives at retail establishments that incorporate milk in their drinks. Defendant's conduct of imposing a $0.50-$0.80 surcharge on lactose-free drinks evidences an obvious attempt to profit from a vulnerable class of consumers precisely because of their medical condition. Defendant's conduct violates federal and state anti-discrimination laws and must be rectified by this Court.

Because lactose intolerance and milk allergies are considered a disability under the law, Defendant is prohibited from providing disabled persons with unequal

---

[1]   See.   https://ask.usda.gov/s/article/What-are-staple-foods-For-SNAP-Retailers (last visited Jan.25, 2023).

[2] The National Agricultural Statistics Service (NASS), estimates that for November 2021, U.S. milk production was 18.035 billion pounds (601.2 million per day). That means that approximately two pounds of milk per day are produced for every American. Lactose intolerance is not a "garden variety" allergy, it is a massive and fundamental impediment to enjoying life.  Source: USDA, Economic Research Service | Situation and Outlook Report, LDP-M-331 | January 19, 2022 (last visited Jan. 25, 2023).

services. The ADA was amended in 2008 with the intent to expand, not limit, the definition of what constitutes a disability under the ADA. The Justice Department issued new guidelines in 2016 to include the amendments. Most of the case law cited in the Motion to Dismiss (Dkt. 18), interprets lactose intolerance as being outside the scope of the ADA. However, the cases cited are either decided prior to the 2008 amendments or interpret the law based on pre-amendment reading of the statute. Since 2016, Courts have been favorable to an expansion of ADA rights and Congressional intent on this issue is supportive. Today, lactose intolerance is a disability under the ADA as it impacts both eating and digestion.

Defendant's doomsday scenario that a ruling for Plaintiff will require millions of businesses to alter their food and beverage offerings and the prices charged is unfounded. Plaintiff is not claiming that the Court should set the price of Defendant's beverages. Plaintiff is not claiming that Defendant is required to serve non-dairy alternatives such as soy, oat, coconut or almond "milk". Plaintiff is not asking the Court to tell Defendant how to make its coffee drinks and beverages. Plaintiff is not asking the Court to use the ADA to change the mix of goods that Defendant stocks and sells to include any accessible or special goods - Defendant already stocks and sells non-dairy alternatives and promotes those products on its website.

Plaintiff's claims are based simply on the fact that Defendant's surcharge for such milk alternatives is discriminatory against persons with lactose intolerance. If Defendant chooses to offer such substitutes for milk, it denies Plaintiff a reasonable accommodation when it charges extra for such substitutes, even if the cost for the

substitutes is similar to the cost of milk. In fact, Defendant (the largest coffee chain in the world) has acknowledged that the surcharge is not reasonable, as it eliminated the surcharge for non-dairy alternatives in many of its international stores. In the U.S., Defendant charges the illegal surcharge for non-dairy alternatives substituted into its beverages and served at its retail establishments. This practice is a clear violation of the ADA, Florida Civil Rights Act, and unjustly enriched Defendant.

## I. <u>STATEMENT OF FACTS</u>

As recognized by the 2008 amendments to ADA, lactose intolerance is a disability that makes it difficult to digest lactose. (Compl. ¶ 25). Lactose is a type of natural sugar found in milk and dairy products. (*Id* at ¶ 25). Lactose intolerance occurs when the stomach does not make enough of the enzyme lactase, which the body needs to be able to break down and digest lactose. (*Id* at ¶ 27). When lactose moves through the large intestine without being properly digested, it can cause gas, severe bloating, excruciating belly pain and diarrhea. (*Id* at ¶ 26). A person's body may stop making lactase after a short-term illness or as a result of a lifelong chronic disease such as cystic fibrosis. (*Id* at ¶ 27). Plaintiff has received medical treatment related to his lactose intolerance, including an emergency room visit, and been advised by a medical physician not to consume milk-based products. (*Id* at ¶ 24). Because of his lactose intolerance, Plaintiff must order drinks that substitute milk for non-dairy alternatives at Defendant's stores. (*Id* at 24).

Plaintiff has been diagnosed as lactose intolerant and must consume drinks that do not contain milk or milk-based products. (Compl. ¶ 22). Plaintiff will suffer adverse

health effects if he ingests milk or milk-based products including stomach discomfort, digestive tract inflammation and bowel irregularities.  (*Id* at ¶ 23). Plaintiff's lactose intolerance limits the major life activities of his life including eating, drinking and consuming milk-based products.  (*Id* at ¶ 27). Plaintiff has received medical treatment related to his lactose intolerance, including an emergency room visit.  (*Id.* at ¶ 24).

Defendant's standard offering in most drinks and beverages is 2% cow's milk. (Compl. ¶ 7).  Defendant will substitute some other types of milk including whole milk, fat-free skim milk and breve for the standard 2% milk in its beverages with no additional charge. (*Id.* at ¶ 8). Defendant modifies its regular beverage offerings to make caffeine-free beverages at no additional charge for persons with medical conditions including hypertension and to make sugar-free drinks for people with diabetes.  (*Id.* at ¶ 10, 11). There is no specific experience or extra work needed for Defendant's employees to make sugar-free or caffeine-free drinks. (*Id.* at ¶ 12). There is no specific experience or extra work needed to substitute non-dairy alternatives such as soy, almond, coconut, or oat "milk" in place of 2% milk for those persons with lactose intolerance. (*Id.* at ¶ 12). Defendant has eliminated the surcharge non-dairy alternatives at many of its international locations.  (*Id.* at ¶ 6).

## II. <u>LEGAL STANDARD</u>

In deciding a motion to dismiss, the Court is required to accept the plaintiff's allegations as true and view the complaint in the light most favorable to the plaintiff. *See Timson v. Sampson*, 518 F. 3d 870, 872 (11th Cir. 2008). A complaint need only

provide "a 'short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the claim in and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 554 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Although the alleged claim must be plausible on it face, "[t]he plausibility standard is not akin to a probability requirement." *Ashcroft v. Iqbal*, 566 U.S. 662, 678-679 (2009). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. *See Jackson v. Hospital Corp. of Am. Mideast, Ltd.*, 800 F. 2d 1577, 1579 (11th Cir. 1986). To survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face." *See Twombly*, 550 U.S. 554, 570 (2007). *Id.* at 570.

### III.   ARGUMENT

### 1. PLAINTIFF STATES A VALID CLAIM FOR DEFENDANT'S VIOLATION OF THE ADA

Title III of the ADA provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). A plaintiff states a cause of action for violation of the ADA where he alleges that (1) he is disabled, (2) defendant is a private entity that owns, leases, or operates a place of public accommodation, and (3) he was denied a public accommodation by defendant because of his disability. *Hoewischer v. Cedar Bend Club,*

*Inc.*, 877 F. Supp.2d 1212, 1220 (M.D. Fla. 2012). Plaintiff has alleged facts showing that he has a disability under the ADA. (Compl. ¶¶ 24-27). Moreover, Defendant is a place of public accommodation within the meaning of the ADA. *See* 42 U.S.C. § 12181(7)(B).  (*Id.* at ¶ 53).[3] Plaintiff was denied a public accommodation by Defendant because of his disability. (*Id.* at ¶¶  54-56).  Plaintiff sustains his burden to state a cause of action under the ADA.

### a.  The 2008 Amendments were Designed to Expand the Scope of ADA

The American with Disabilities Act was amended in 2008. The clear Congressional intent of the amendments to the ADA ("ADAAA")[4] was to expand the scope and broaden the disabilities that are included within the ADA's protections. Section 3 of the ADA was amended to include the following language under Section 4 Rules of Construction Regarding the Definition of Disability: (A) the definition of disability in this Act shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act. *See* 42 U.S.C. 12102(4)(A) (Compl. ¶ 61). The ADAAA was passed to restore the intent and protections of the Americans with Disabilities Act of 1990 and reject the United States Supreme Court decisions that had been interpreted by Congress as too narrowly decided as to the definition of what is included as a disability under the ADA. (Compl. ¶ 59). Specifically, the ADAAA was passed to negate rulings by the United States

---

[3] Defendant does not challenge that it is a place of public accommodation and subject to the ADA's requirements. Therefore this response will address requirements (1) and (3).
[4] Any reference to ADA in the Complaint or this response, is a reference to the statute in force as of the date of the Complaint, which is amended by the ADAAA.

Supreme Court in 1) *Sutton v. United Airlines, Inc.*, 527 U.S. 471 (1999); and 2) *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002), both of which Congress believed construed the definition of disability under the ADA as too narrow. (Compl. ¶ 59).

Plaintiff's lactose intolerance impacts the major life activities of digestion and drinking. The ADA, and 7 *CFR*, Section 15b, define a person with a disability as any person who has a physical or mental impairment which substantially limits one or more major life activities, has a record of such impairment, or is regarded as having such impairment. Major life activities are broadly defined and include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. Major life activities also include the operation of major bodily functions, including but not limited to, functions of the neurological, digestive, or respiratory systems. *See Questions and Answers about the Department of Justice's Final Rule Implementing the ADA Amendments Act of 2008. See* https://archive.ada.gov/regs2016/adaaa_qa.html. A physical or mental impairment does not need to result in a severe, life-threatening reaction to be considered a disability. It is sufficient that the impairment limits a major life activity. For instance:

> Digestion is an example of a bodily function that is a major life activity. A participant whose digestion is impaired by a lactose intolerance may have a disability regardless of whether consuming milk causes the participant severe distress.

California Department of Education, *Modifications to Accommodate Disabilities*, https://

www.cde.ca.gov/ls/nu/cc/mbcacfp082017sfsp022017.asp (last visited Jan. 26, 2023).

The cases cited by Defendant finding that lactose intolerance is not covered by the ADA are all decided pre-ADAAA and interpret the version of the ADA which did not include "eating" or "major bodily functions "as being major life activities.

**b. Plaintiff is Disabled Under the ADA as amended by ADAAA**

Lactose intolerance is a disability that is protected from discrimination by the ADA. Courts around the country found that lactose intolerance is a disability under the ADA, as amended by ADAAA, and that it impacts a major life activity. *See Hebert v. CEC Entm't, Inc.*, 6:16-CV-00385, 2016 WL 5003952, at *1 (W.D. La. July 6, 2016) (report and recommendation adopted); *see also See Harris v. Adams*, No. A 157443, 2020 Cal. App. Unpub LEXIS 6432, at *16-17 (October 1, 2020). In *Hebert,* the district court denied Defendant's motion to dismiss, finding that the plaintiff's allegations regarding their son's eating dairy products may cause an anaphylactic reaction that could result in death.  The Court found defendant's argument the plaintiffs failed to state a claim because a food allergy is not a disability as unpersuasive. The Court found that "[t]he statute itself states that, to be disabled under the ADA, a person must have a 'physical or mental impairment that substantially limits one or more of the major life activities.'" *See Hebert*, 2016 WL 5003952, at *1.  Plaintiffs alleged that if their son eats **dairy products**, he may have an anaphylactic reaction that could result in death. Thus, they have alleged that he has a physical impairment that restricts him from eating the way most people in the general population eat; consequently, they have alleged that he is

disabled as that term is defined in the ADA. These allegations are sufficient to overcome the defendant's first challenge to the sufficiency of the complaint. Plaintiff has alleged that drinking beverages, including coffee drinks, is a major life activity. (Compl. ¶ 63).

In *Harris*, refusing service to a customer because of her lactose intolerance violates California's Unruh Act, an anti-discrimination statute similar to the ADA. Lactose intolerance is clearly a personal characteristic similar to a physical disability. (*Harris*, supra, 52 Cal.3d at p. 1160 ["The categories [mentioned in the Act] involve personal as opposed to economic characteristics—a person's geographical origin, physical attributes, and personal beliefs."].)  *Harris v. Adams*, No. A 157443, 2020 Cal. App. Unpub LEXIS 6432, at *16-17 (October 1, 2020).

Defendant heavily relies on *Hustvet v. Allina Health Sys.*, 910 F.3d 399, 411 (8th Cir. 2018). That case is easily distinguishable. Specifically, in *Hustvet* the court found that: "[Plaintiff] has never been hospitalized due to an allergic or chemical reaction, never seen an allergy specialist, and never been prescribed an EpiPen. Nor has she ever sought any significant medical attention when experiencing a chemical sensitivity, taken prescription medication because of a serious reaction, or had to leave work early because of a reaction. Instead, the record reveals that Hustvet has garden-variety allergies to various items that moderately impact her daily living." In fact, here, Negreanu has been hospitalized due to his lactose intolerance, has seen a doctor about it, sought significant medical attention when experiencing a sensitivity and took medication because of his condition. (Compl. ¶ 24).  *Hustvet* presents the opposite set

of facts and the Plaintiff's disability in the case at hand is covered under the ADA.

Defendant is also using the example in *Zongo v. Brott*, CV 21-407 (NEB/BRT), 2022 WL 2182196, at *2 (D. Minn. Mar. 30, 2022), *report and recommendation adopted*, 21-CV-407 (NEB/BRT), 2022 WL 2181759 (D. Minn. June 16, 2022) (Def. Mot. at 7) and admits that the claim there was "for violation of Section 504 of the Rehabilitation Act," but claims that "the analysis is equally applicable to claims under Title III". (*Id.*) This is not accurate. The analysis was based on language identical with the pre-ADAAA language and bears no weight to an analysis of the law today.

### c.  The ADA Prohibits Surcharges Such as Those Charged by Defendant

Plaintiff alleges that he was denied reasonable public accommodation by Defendant because of his disability. The ADA requires that a "public accommodation shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities[.]" 28 C.F.R. § 36.302(a) (Compl. ¶ 54, 56).  *See also* 42 U.S.C. § 12182(b)(2)(A)(ii) (making it discriminatory to fail to make reasonable accommodations when necessary to afford goods, services, facilities, privileges, advantages, or accommodations to disabled persons).

The principal dispute in this case is whether Defendant's policy of surcharging persons with lactose intolerance for non-dairy alternatives is discriminatory[5].

---

[5] The Defendant claims that the surcharge is not a surcharge but an actual price. That interpretation would value 1oz of almond, soy or coconut "milk" at $0.80 and 1oz of regular milk at $0.00.  Regardless, this is an issue of fact not to be determined at the pleading stage.

Defendant does not cite to any cases permitting such a surcharge to persons with a disability. And, indeed, the law is to the contrary. Importantly, the ADA provides that a "public accommodation may not impose a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids [...] and reasonable modifications in policies, practices, procedures, that are required to provides that individual or group with the nondiscriminatory treatment required by the Act or this part."  28 C.F.R. § 36.301 (Compl. ¶ 58). *See also* 42 U.S.C. § 12182(b)(ii) (making it discriminatory to provide disabled persons with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded other individuals).

A surcharge on customers with celiac disease who ordered from P.F. Chang's gluten-free menu items violates the ADA.  *See Phillips v. P.F. Chang's China Bistro, Inc.*, No. 5:15-cv-00344, 2015 WL 7429497 (N.D. Cal., Nov. 23, 2015).  In *Phillips*, the plaintiff contended that P.F. Chang's China Bistro ("P.F. Chang's") discriminated against customers with celiac disease "by charging $1.00 more for some gluten-free menu items than for comparable non-gluten-free menu items." *Id*. at *1. The district court in *Phillips* found that the plaintiff had stated an Unruh Act claim because the Plaintiff alleged that P.F. Chang's "created an entirely separate—and higher priced—gluten-free menu targeted to persons with celiac disease," that P.F. Chang's "direct[ed] customers with celiac disease to the gluten-free menu rather than offering to make modifications for celiac customers the way [P.F. Chang's] does for other

customers," and that "the price differential between the regular-menu items and their gluten-free-menu equivalents [was] the same across the board." *Id.* at *4. Accordingly, the district court found that the plaintiff in *Phillips* adequately alleged that **"**P.F. Chang's d[id] not provide 'full and equal' accommodations or services to those suffering from celiac disease" and that, from these facts, "one c[ould] reasonably infer that P.F. Chang's intentionally discriminate[d] by targeting customers with celiac disease." *Id.* at *4-6.

Defendant's own website has a section entitled "Customizing Beverages at Starbuck's Stores".[6] On this website, there is a sub-section with the header "Select your milk", which states as follows: "Customers can choose from whole, 2% milk or nonfat milk, or non-dairy alternatives such as soy, coconut or almond." There is *no* reference anywhere on the website to the surcharge for non-dairy alternatives. Defendant induces customers such as Plaintiff to "customize" their beverages but selectively imposes a surcharge on all drinks that don't contain lactose. Because of his disability, Plaintiff, and others similarly situated, have no choice but to select a non-dairy alternative. Further, Defendant's website contains a "Starbucks Beverage Health and Wellness Fact Sheet" that contains similar language indicating customer's milk choices but failing to state the surcharge for non-dairy alternatives.[7]

Defendant's assertion that it is not required to accommodate persons with

---

[6]   *See* https://stories.starbucks.com/press/2020/customizing-beverages-at-starbucks-stores-2/- "Customizing Beverages at Starbucks' Stores."(last visited 01/25/2023).

[7]   *See* https://stories.starbucks.com/press/2020/customizing-beverages-at-starbucks-stores-2/- "Starbucks Beverage Health and Wellness Fact Sheet."(last visited 01/25/2023).

lactose intolerance by providing non-dairy alternatives without imposing a surcharge is incorrect. As discussed above, Defendant regularly provides modifications to non-disabled customers free of charge (i.e. sugar-free or caffeine-free, drinks). Defendant's failure to offer the same benefit to persons with lactose intolerance (except for a fee) expressly constitutes discrimination under the ADA. *See* 42 U.S.C. § 12182(a)(i) (making it discriminatory to afford disabled persons with any facility, privilege, advantage, accommodation that is not equal to that afforded to other individuals).

Defendant's assertion that a surcharge is reasonable because non-dairy alternatives costs more is neither true nor relevant. At the pleading stage, Defendant cannot point to any evidence or admission supporting that assertion. Whether providing non-dairy alternatives to customers for the same price as regular 2% milk would place an undue burden on Defendant not only is an affirmative defense that Plaintiff need neither plead nor prove and should only be pled as part of an answer, *Sunny Corral Mgmt., LLC v. Value Dining Inc.*, 08-60072-CIV, 2008 WL 5191466, at *2 (S.D. Fla. Dec. 10, 2008), but also requires a fact-intensive inquiry not appropriate on a motion to dismiss. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

Defendant's assertion that Plaintiff's claims will cause the Court to effectively set the price of all milk and milk alternatives is without foundation. Milk and alternatives sold in grocery stores and other locations are stand-alone products. They are sold in separate containers with separate branding, separate ingredients and separate pricing. There are numerous factors that could go into pricing milk products sold at retail. Plaintiff is not requesting the Court to set the price of these products. However,

Plaintiff is asking the Court to find that the surcharge for non-dairy alternatives sold on a particular product – coffee drinks and beverages sold by Defendant at its stores – violates the ADA.  Defendant is free to set the price of its drinks and beverages sold to consumers.  What it is not free to do is impose a surcharge for non-dairy alternatives that Plaintiff, and others similarly situated, must pay because of their disability. Defendant readily makes modifications to its beverages with no surcharge added but fails to provide a reasonable accommodation to Plaintiff for his lactose intolerance, imposing instead a surcharge for non-dairy alternatives.  Defendant's surcharge for non-dairy alternatives targets disabled persons such as Plaintiff.  Defendant's attempts to expand the scope of Plaintiff's claims to all milk products should be disregarded as it mischaracterizes Plaintiff's claims.

Defendant relies heavily on *A.L. by and through D.L. v. Walt Disney Parks and Resorts US, Inc.*, 900 F.3d 1270 (11th Cir. 2018) for the proposition that the Court cannot dictate pricing for goods such as milk and that the ADA does not require public accommodations to sell accessible goods or special goods. (Dkt. 18, Def. Mot., pp. 10-11).  Its reliance on the *A.L.* decision demonstrates Defendant's misunderstanding of Plaintiff's allegations. First, Plaintiff is not asking this Court to set the price of Starbucks beverages, nor does Plaintiff claim that Starbucks is required to lower its prices for beverages made with non-dairy alternatives for those with lactose intolerance.  However, Plaintiff is claiming that Starbucks cannot charge a different, or higher, price to those persons with lactose intolerance than the price charged to those persons without the need to for non-dairy alternatives.

Defendant cites *Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 560 (7th Cir. 1999) for the proposition that "a wheelchair is a different product from an armchair." This is an accurate observation, but a cappuccino, or a latte are essentially the same, if crafted using 2% milk, almond milk or soy milk. "A camera store may not refuse to sell cameras to a disabled person" *Id.* and certainly cannot impose a non-cost-related surcharge on all high-contrast LCD cameras only because those cameras can be used by the visually impaired people.

The ADA does not require provision of different goods or services, just nondiscriminatory enjoyment of those that are provided. *Anderson v. Macy's, Inc.,* 943 F. Supp. 2d 531, 546 (W.D. Pa. 2013). In *Anderson*, there was no allegation that the department store made any modifications for disabled persons. *Id.* at 535. Nor did the plaintiff in Anderson allege that the plus-size clothing was directed at disabled persons, merely that it happened to affect her as a disabled person.[8] Plaintiff is not claiming that Starbucks is required to offer non-dairy alternatives, only that if it does offer non-dairy alternatives that it cannot impose a surcharge that discriminates against those that are required to have the non-dairy alternatives.

## 2. PLAINTIFF STATES A VALID CLAIM FOR VIOLATIONS OF THE FLORIDA CIVIL RIGHTS ACT

Plaintiff is not required to exhaust administrative remedies before filing his Complaint with this Court. Both under federal and Florida law, Courts will not require

---

[8] The Court in *Anderson* dismissed the case because it found the plaintiff lacked standing to assert her claims. *Anderson* at 541. Consequently, the Court's discussion of whether the plaintiff could state a claim is mere dictum.

exhaustion of remedies when the administrative remedy is inadequate because it does not exist or would not provide relief commensurate with the claim. *Panola Land Buyers Association v. Shuman*, 762 F. 2d 1550, 1556 (11th Cir. 1985). In determining whether exhaustion is required, federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion. "[A]dministrative remedies need not be pursued if the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further." *West v. Bergland,* 611 F.2d 710, 715 (CA8 1979), cert. denied, 449 U.S. 821, 101 S.Ct. 79, 66 L.Ed.2d 23 (1980). Application of this balancing principle is "intensely practical," *Bowen v. City of New York,* 476 U.S., at 484, 106 S.Ct., at 2032, citing *Mathews v. Eldridge,* 424 U.S. 319, 331, n. 11, 96 S.Ct. 893, 901, n. 11, 47 L.Ed.2d 18 (1976). Here, the administrative remedy would be wholly inadequate and impractical. The Florida Commission on Human Relations cannot grant class-wide injunctive relief to Plaintiff and all those persons similarly situated. The Commission cannot give Plaintiff and the putative class the relief sought. It would be impractical to require Plaintiff and all putative class members to file a clam first with the commission before proceeding with their claims in this Court. Any relief ordered by the commission would not be commensurate with the relief sought by Plaintiff and those similarly situated. See *State ex rel. Dept. of Gen. Services v. Willis*, 344 So. 2d 580, 590 (Fla. 1st DCA 1977). (" [If] the promised administrative remedy is too little or too late,[…] a circuit court must intervene.")

### 3.  **PLAINTIFF STATES A VALID CLAIM FOR UNJUST ENRICHMENT**

Unjust enrichment is a common law claim that arises where Plaintiff sufficiently and plausibly alleges the elements thereof; it requires no statutory right of action. Under Florida law, Plaintiff must establish four elements to recover unjust enrichment. *Merle Wood & Associates, Inc. v. Trinity Yachts, LLC,* , 714 F.2d 1234, 1237 (11th Cir. 2013)  The elements of a cause of action for unjust enrichment are: 1) plaintiff has conferred a benefit on the defendant; 2) defendant has knowledge of the benefit; 3) defendant accepts and retains the benefit conferred; and 4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value. *Media Services Group, Inc. v. Bay Cities Communications, Inc.* 237 F. 3d 1326, 1330-31 (11th Cir. 2001) (internal citations omitted). Plaintiff has properly alleged he has conferred a benefit on the defendant and that Defendant voluntarily accepted and retained the benefit conferred.  (*Compl.* ¶¶ 77-81).  Defendant does not argue that the first two elements of Plaintiff's claim are deficient.

Defendant position is that the fourth element of the claim is not satisfied because Plaintiff received value for any payments be made to Defendant.  (Dkt. 18, Def. Mot., pp. 21-22), citing to *Pincus v. Am. Traffic Sols., Inc.*, 333 So. 3d 1095 (Fla. 2022).  The *Pincus* decision is easily distinguishable and does not bar Plaintiff's unjust enrichment claim. In *Pincus*, the plaintiff filed a class action lawsuit against American Traffic Solutions ("ATS") stemming from the company's charging of a five percent convenience fee to process payments for red light camera citations. *See Pincus*, 333 So.3d at 1096. The Court held that even if the collection of the fee violated Florida

law, ATS's retention of the fee would not be inequitable because Pincus received adequate consideration in exchange for the privilege to pay by credit card. This adequate consideration included, among others that Pincus did not have to procure postage and a check or money order and that he could pay the balance over time. *Id.* at 1097.

In the instant case, there is no adequate consideration through a bargained-for-exchange.  There are no benefits received by Plaintiff other than receiving a coffee-based beverage at an inflated price. There cannot be consideration *at all* if it is premised upon an act that is itself a violation of the law.  *State Farm Mut. Auto. Ins. Co. v. Physicians Grp. of Sarasota, LLC*, 9 F.Supp.3d 1303, 1312 (M.D. Fla. 2014) ("According to the Eleventh Circuit, Florida law supports a cause of action for unjust enrichment upon a defendant's acceptance and retention of a benefit 'that it is not legally entitled to receive in the first place[.']") (*citing State Farm Fire & Casualty Co. v. Silver Star Health and Rehab*, 739 F. 3d 579 (11th Cir. 2013).  There is no benefit conferred unrelated to the alleged illegal activity.  The only benefit relates directly to the illegal surcharge. Simply, if Plaintiff had not paid the illegal surcharge, then he would not have received the beverage or drink.  Essentially, there was no bargained-for-exchange – because of his disability, Plaintiff had no choice other than the pay the illegal surcharge. Defendant did not give adequate consideration for the illegal surcharge, which was the only benefit conferred on Defendant. Plaintiff does not claim that the entire price of the drink unjustly enriched Defendant, but the claim is made exclusively for the surcharge. Here, it would be inequitable for the Defendant to retain the surcharge

without providing any additional value to Plaintiff.

Thus, because Plaintiff has sufficiently and properly pled the elements of unjust enrichment, and because his allegations must be accepted as true and construed in the light most favorable to him, Plaintiff has properly pled a cause of action for unjust enrichment, and Defendant's Motion to Dismiss Count IV should be dismissed.

### Alternatively, Leave to Amend Should Be Granted

Plaintiff requests that he be given leave to file an amended complaint to cure any defects in the Complaint, including the FCRA count. Fed. R. Civ. P. 15(a). A district's court discretion to dismiss a complaint without leave to amend is 'severely restricted' by Fed. R. Civ. P. 15(a), which directs that leave to amend 'shall be freely given when justice so requires.'" *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (*citing Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988). Generally, where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the court dismisses the action with prejudice. *Id.* at 1163. In this case, there has been no prior amendments and no showing that amendments would be futile. If the Court dismisses Plaintiff's Complaint, in any part, Plaintiff should be granted leave to file an amended complaint.

## V.   **CONCLUSION**

Based on the foregoing, Plaintiff respectfully requests that Defendant's motion to dismiss be denied. Alternatively, the Court grant should grant Plaintiff leave to amend his Complaint.

Dated: January 27, 2023                    Respectfully Submitted,


                                           s/Keith L. Gibson
                                           **Keith L. Gibson, Esq.**
                                           **(Admitted *Pro Hac Vice*)**
                                           490 Pennsylvania Avenue, Suite 1
                                           Glen Ellyn IL 60137
                                           Telephone: (630) 677-6745
                                           Email: keith@keithgibsonlaw.com

                                           Bogdan, Enica, Esq.
                                           FL Bar No.: 101934
                                           66 West Flagler St., Ste. 937
                                           Miami, FL 33130
                                           Telephone: (305) 539-9206
                                           Email: Bogdan.Enica@practus.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2023, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification to all counsel and parties of record in this case.

January 27, 2023

/s/Keith L. Gibson
**Keith L. Gibson, Esq.**