Exhibit "A"

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| DONNIE NEGREANU and ELAINE CHAIX, individually and on behalf of all those similarly situated, | ) ) ) | Case No.: 8:22-cv-02421-CEH-SPF |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **FIRST AMENDED CLASS** |
| | ) | **ACTION COMPLAINT** |
| STARBUCKS CORPORATION, a Washington Corporation, | ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## <u>FIRST AMENDED CLASS ACTION COMPLAINT</u>
## <u>AND DEMAND FOR JURY TRIAL</u>

Plaintiffs, DONNIE NEGREANU ("Negreanu") and ELAINE CHAIX ("Chaix") (referred to individually as "Plaintiff" or collectively as "Plaintiffs") bring this First Amended Class Action Complaint against the above-named STARBUCKS CORPORATION, a Washington Corporation, ("Starbucks" or "Defendant"), and in support thereof states the following:

### <u>INTRODUCTION</u>

1.     Plaintiffs bring this action against Starbucks on behalf of all consumers in Florida and California within four years of the filing of this lawsuit who have purchased coffee-based drinks or other beverages from Starbucks that contained non-

dairy milk alternatives ("Non-Dairy Alternatives") and paid a surcharge for the Non-Dairy Alternatives, including vegan or lactose-free milk.

2.     It is medically necessary for persons like Plaintiffs to avoid consuming drinks that contain milk.  Negreanu ordered coffee-based and other drinks at Starbucks retail coffee shops in Florida since at least 2012 to the present.  Chaix ordered coffee-based and other drinks at Starbucks retail coffee shops in California since at least 2016 to the present.

3.     When Plaintiffs visited Starbucks coffee shops in Florida and California, they ordered drinks that included milk as part of the regular menu item.  Plaintiffs requested to substitute milk for Non-Dairy Alternatives, specifically soy, oat, coconut, or almond "milk," and were charged an extra $0.50 - $0.80 surcharge by Starbucks for the substitution.

4.     Throughout the class period, Starbucks charged a $0.50 - $0.80 surcharge ("Surcharge") to its customers who were lactose intolerant to substitute milk for Non-Dairy Alternative products in its beverages.

5.     In 2020, the average price of a Starbucks drink was $2.75, therefore the Surcharge represented almost 19% of the averaged price beverage. Also, milk is not the only ingredient in a drink at Starbucks, therefore the Surcharge represents even a higher percentage proportional to the price of milk (up to 200%).

6.      There is no material difference between the price of regular milk and the price of Non-Dairy Alternatives that supports levying the Surcharge to substitute Non-Dairy Alternatives in Starbucks' drinks.

7.      Starbucks itself has recognized there is no material difference in the price for Non-Dairy Alternatives, as it has eliminated the Non-Dairy Alternatives Surcharge at many of its international locations.

8.      Starbucks standard offering in most beverages is 2% cow's milk.

9.      Starbucks will substitute breve, whole milk, or fat-free skim milk for the 2% milk ingredient to its beverages at no additional charge.

10.      Starbucks offers several options when it comes to the content of fat in the milk but does not offer a lactose-free milk option.

11.      Starbucks will modify its regular beverage offerings to remove caffeine or make caffeine-free beverages at no additional charge for persons with a variety of conditions, including hypertension.

12.      Starbucks will modify its regular beverage offerings to remove sugar or use sugar-free sweeteners at no additional charge for those persons with diabetes or who need to control weight.

13.      There is no expertise or additional work required of Starbucks employees to substitute whole milk or fat-free milk in place of 2% regular milk, to make caffeine-free or sugar-free beverages, or to substitute Non-Dairy Alternatives such as soy, almond, coconut, oat, or other lactose-free "milk" in place of 2% regular milk.

14.     Nevertheless, Starbucks charges customers with lactose intolerance an excessively high Surcharge to substitute Non-Dairy Alternatives in its drinks; Starbucks does not offer a lactose-free milk option.

15.     In this way, Defendant's conduct violates the Americans with Disabilities Act, Florida Civil Rights Act, California Unruh Act, and constitutes common law Unjust Enrichment.

16.     Defendant discriminates against Plaintiffs and the putative class members by levying a Surcharge for its Non-Dairy Alternatives in the form of Non-Dairy Alternatives added to its coffee-based drinks and other beverages.

17.     Plaintiffs also seek declaratory and injunctive relief to ensure that Defendant charges the same price to lactose intolerant customers for the same menu items as regular customers and that it does not add a Surcharge for Non-Dairy Alternatives such as soy, almond, coconut, oat, or other lactose-free "milk".

## JURSIDICTION AND VENUE

18.     This Court has jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. § 1332(d).  This is a putative class action whereby: (i) the proposed nationwide class consists of more than 100 members; (ii) at least one class member has a different citizenship from Defendant; and (iii) the claims of the proposed class exceed $5,000,000 in the aggregate.

19.     The Court has personal jurisdiction over the Defendant due to its continuous and systemic contacts with the State of Florida.

20.     At all times the Plaintiff Negreanu resided in Largo, Florida, which is located in Pinellas County, within the Middle District of Florida.  A substantial part of the events or omissions giving rise to the claim occurred in Pinellas County.  Venue is proper in the Middle District of Florida, pursuant to 28 U.S.C. § 1391(b)(2).

## THE PARTIES

**A.     Plaintiffs**

21.     Plaintiff, Donnie Negreanu, is an individual residing in Pinellas County, Largo, Florida.  Plaintiff has purchased items, including coffee drinks, at various Starbucks' locations in Pinellas County and throughout the state of Florida.

22.     Plaintiff, Elaine Chaix, is an individual residing in Fresno County, Fresno, California.  Plaintiff has purchased items, including coffee drinks and other beverages, at various Starbucks' locations in the State of California.

**B.     Defendant**

23.     Defendant, Starbucks Corporation, is incorporated in the State of Washington and its principal place of business is located at 2401 Utah Avenue South, Seattle, Washington 98134.  Starbucks owns and operates over 34,000 coffee stores worldwide including approximately 15,000 in the United States and over 700 in the State of Florida and over 3,000 in the state of California.

## BACKGROUND FACTS

24.     Plaintiffs have been diagnosed as lactose intolerant and must consume drinks that do not contain milk or milk-based products.

25.     Plaintiffs will suffer adverse health effects if they ingest milk or milk-based products, including stomach discomfort, digestive tract inflammation, bowel irregularities and vomiting.  As a result, Plaintiffs must pay very careful attention to the drinks they consume and can only consume non-dairy products in drinks that contain Non-Dairy Alternatives including lactose-free milk.  Plaintiffs' disability limits the major life activities of drinking (and the nutritional benefits from ingesting drinks), and digestion.

26.     Plaintiff Negreanu has received medical treatment related to his lactose intolerance, including a visit to an emergency room, and has been advised by a medical physician not to consume milk-based products.

27.     Plaintiff Chaix has received medical treatment related to her lactose intolerance and has suffered symptoms including vomiting and stomach pain lasting up to a week.  She has been advised by a medical physician not to consume milk-based products.

28.     Lactose intolerance is a disability that makes it difficult to digest lactose. Lactose is a type of natural sugar found in milk and dairy products.

29.     When lactose moves through the large intestine without being properly digested, it can cause gas, bloating, belly pain and diarrhea.  Many people who have a lactose intolerance cannot eat or drink any milk or milk-based products.

30.     Lactose intolerance occurs when the small intestine does not make enough of an enzyme called lactase.  The body needs lactase to break down and digest

lactose.  A person's body may stop making lactase after a short-term illness such as an infection or as part of a lifelong chronic disease such as cystic fibrosis.

31.     Because of their lactose intolerance, Plaintiffs have ordered Non-Dairy Alternatives at Starbucks containing Non-Dairy Alternatives such as soy, almond, coconut, oat, or other lactose-free "milk".  Plaintiffs have, on every occasion, been levied the Surcharge by Starbucks for Non-Dairy Alternatives in their coffee drinks ordered and consumed from Defendant's stores in Florida and California.

32.     The Non-Dairy Alternative Surcharge has real and practical consequences for consumers suffering from lactose intolerance.  A consumer will pay at least $0.50 - $0.80 more for a drink at Starbucks for Non-Dairy Alternatives.  Non-Dairy Alternatives, which do not contain lactose, is medically necessary for individuals with lactose intolerance and is not a choice.

33.     Without the availability of Non-Dairy Alternatives options, consumers with lactose intolerance are deprived of the opportunity to enjoy consuming Starbucks' coffee beverages and drinks with their friends, family, and business associates.

34.     Upon information and belief, Starbucks sells approximately 4 million coffee-based drinks per day.

35.     Various studies in the United States conclude that approximately 12-48% of the U.S. population is lactose intolerant.

36.     Starbucks' annual revenue in 2021 exceeded $29 billion dollars.

37.     Starbucks is the largest coffee chain in the world.

38.     Because of its size, Starbucks has the power to control the manufacturing costs for Non-Dairy Alternatives.

39.     Upon information and belief, Starbucks produces or has a significant stake in producers of Non-Dairy Alternatives including soy, oat, almond, and coconut milk.

40.     Upon information and belief, Starbucks has earned over $1 billion dollars in the United States as a result of its discriminatory and illegal levying of the Surcharge during the class period.

## CLASS ALLEGATIONS

41.     Plaintiffs bring this action as a class pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following classes:

(A) National Class: All persons who (1) suffer from lactose intolerance, or an intolerance to milk or milk-based products; and (2) who purchased drinks or other items from Starbucks within four years prior to the filing of the Complaint and continuing to the present.

(B) Florida Subclass: All persons who (1) are citizens of Florida; (2) suffer from lactose intolerance, or an intolerance to milk or milk-based products; and (3) who purchased drinks or other items from Starbucks in Florida within four years prior to the filing of the Complaint and continuing to the present.

(C) California Subclass: All persons who (1) are citizens of California;  (2) suffer from lactose intolerance, or an intolerance to milk or milk-based products; and

(3) who purchased drinks or other items from Starbucks in California within two years prior to the filing of the Complaint and continuing to the present.

42.     The classes exclude counsel representing the class, governmental entities, Defendant, any entity in which Defendant has a controlling interest, Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other putative class members.

43.     Plaintiffs reserve the right to amend or modify the class descriptions with greater particularity or further division into subclasses or limitation to particular issues.

44.     This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23 because it is a well-defined community of interest in the litigation and the class is readily and easily ascertainable.

**Numerosity**

45.     The potential members of the class are so numerous that joinder of all members of the class is impractical.  Although the precise number of putative class members has not been determined at this time, Plaintiffs are informed and believe that that the proposed classes include thousands of members.

**Predominance**

46.     There are common questions of law and fact that predominate over any questions affecting only individual putative class members.

## Typicality

47.     Plaintiffs' claims are typical of the claims of the members of the putative class because Plaintiffs ordered and consumed drinks at Defendant's stores, ordered Non-Dairy Alternatives and incurred a Surcharge for that alternative milk during the applicable class period.  Plaintiffs and each class member sustained similar injuries arising out of Defendant's conduct in violation of law.  The injuries of each member of the class were caused directly by Defendant's wrongful conduct.  In addition, the factual underpinning of Defendant's misconduct is common to all members of the putative class and represents a common thread of misconduct resulting in injury to all member of the class. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of putative class members and are based on the same legal theory.

## Superiority of Class Action

48.     A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of putative class members is not practicable and questions of law and fact common to the class members predominate over any questions affecting only individual putative class members.

49.     Each member of the putative class has been damaged and is entitled to recovery by reason of Defendant's illegal acts.

50.     Class action treatment will allow those similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

51.     Plaintiffs are unaware of any difficulties that are likely to be construed in the management of this action that would preclude its maintenance as a class action.

52.     The disposition of all claims of the members of the class in a class action, rather than individual actions, benefits the parties and the Court.  The interests of the class members in controlling prosecution of separate claims against the Defendant is small when compared to the efficiency of a class action.

### Adequacy of Representation

53.     Plaintiffs will fairly and adequately represent and protect the interests of the class.  Plaintiffs' Counsel and for the putative class members are experienced and competent in litigating class actions.

### CLAIMS FOR RELIEF

### COUNT I – VIOLATION OF TITLE III OF AMERICANS WITH DISABILITIES ACT

54.     The allegations contained in Paragraphs 1 - 53 of the First Amended Complaint are incorporated by reference as if fully set out herein.

55.     Plaintiffs assert this count on their own behalf and on behalf of all other similarly situated persons members of the National Class.

56.     Defendant is a public accommodation under the Americans with

Disabilities Act ("ADA"), *see* 42 U.S.C. § 12181 (7)(B), and consequently Defendant is prohibited from discriminating against Plaintiffs and other members of the putative class on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges and advantages provided by Defendant.

57. The ADA requires that a "public accommodation shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford good, services, facilities, privileges, advantages or accommodations to individuals with disabilities[.]". 28 C.F.R. § 36.302(a). *See also* 42 U.S.C. § 12182(b)(2)(A)(ii) (stating that discrimination includes failing to make reasonable modifications when necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities).

58. The ADA makes it discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage or accommodation that is not equal to that afforded to other individuals[.]" 42 U.S.C. § 12182(a)(i). *See also* 42 U.S.C. § 12182(b)(i) (making it discriminatory for a public accommodation to deny disabled persons the opportunity to participate in or benefit from goods, services, privileges, advantages, or accommodations).

59. The ADA requires that a "public accommodation shall make reasonable modifications in policies, practices, or procedures, when the modifications are

necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities[.]" 28 C.F.R. § 36.302(a).

60.    Under the ADA, if an establishment already makes alterations or modifications, or takes special orders for its customers, it must do so for the disabled customer requests as well.  *See* 28 C.F.R. § 36.307(a) & (b) ("A public accommodation shall order accessible or special goods at the request of an individual with disabilities, if, in the normal course of its operation, it makes special orders on requests for unstocked goods, and if the accessible or special goods can be obtained from a supplier with who the public accommodation customarily does business.").

61.    Most importantly, the ADA provides that a "public accommodation may not impose a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids, barrier removal, alternatives to barrier removal, and reasonable modifications in policies, practices, or procedures, that are required to provide that individual or group with the nondiscriminatory treatment required by the Act or this part."  28 C.F.R.  § 36.301.

62.    The ADA Amendments Act of 2008 ("ADAAA") was passed to restore the intent and protections of the Americans with Disabilities Act of 1990.  The ADAAA contained specific Congressional Findings that the amendments were intended to address and reject United States Supreme Court decisions that had incorrectly found in individual cases that people with a range of substantially limiting

impairments are not people with disabilities.  Specifically, the ADAAA cited to the following holdings as having been incorrectly decided: 1) *Sutton v. United Air Lines, Inc.*, 527 U.S> 471 (1999); and 2) *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002).

63.    The clear Congressional intent of the ADAAA was to expand and broaden the disabilities that are included for protection under the ADA.

64.    Section 4(a) of the ADAAA amends Section 3 of the ADA to include the following language under Section 4 Rules of Construction Regarding the Definition of Disability: (A) the definition of disability in this Act shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act.

65.    Lactose intolerance is a disability under the ADA.  The ADA defines a disability, in pertinent part, as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1).  An impairment means "[a]ny physiological disorder or condition that affects "one or more body systems," such as the neurological, digestive, or immune systems.  28 C.F.R. 36.105(b)(1)(i).  An impairment is a disability if it "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population."

66.    Drinking beverages, including coffee drinks, is a major life activity.

67.    Digestion is a major life activity.

68.    Defendant violates the ADA because, as alleged above, it fails to make

14

modifications to persons with lactose intolerance but instead imposes a surcharge on this group of persons, purportedly to cover the costs of such measures, even though there is no material difference between the costs of regular milk and Non-Dairy Alternatives.

69.     As a direct result of Defendant's violation of the ADA, Plaintiffs and class members have suffered injury, including but not limited to the violation of their statutory rights and loss of money as a result of Defendant's illegal price discrimination.  Therefore, Plaintiffs and the putative class members are entitled to damages and injunctive relief.

70.     Defendant's actions were willful, wanton, malicious, and intentional, and were done in willful and conscious disregard of the rights of Plaintiffs and the putative class members.  Defendant's actions were done with the express knowledge, consent, and ratification of Defendant's managerial employees and thereby justify the awarding of punitive and exemplary damages in an amount to be determined at trial.

## COUNT II – VIOLATION OF FLORIDA CIVIL RIGHTS ACT (FCRA) DONNIE NEGREANU (FL)

71.     The allegations contained in Paragraphs 1 through 53 of the First Amended Complaint are incorporated by reference as if fully set out herein.

72.     Plaintiff Negreanu asserts this count on his own behalf and on behalf of all other similarly situated persons members of the Florida Subclass.

73.     Florida law makes it illegal to discriminate in places of public

15

accommodation.

74.   Defendant operates coffee stores in Florida that are open to the public for the sale of Defendant's good, including coffee drinks.

75.   Under Florida law, "[a]ll persons are entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation without discrimination or segregation on the ground of race, color, national origin, sex, pregnancy, handicap, familial status or religion."   See *ss 760.08, Discrimination in places of Public Accommodation*.

76.   Defendant's illegal Surcharge for Non-Dairy Alternatives such as oat, soy, almond, and coconut milk discriminated against Plaintiff solely on the basis of his handicap, specifically a lactose intolerance to milk products.

77.   Defendant violates the FCRA because, as alleged above, it fails to make modifications to persons with lactose intolerance but instead imposes a Surcharge on this group of persons, purportedly to cover the costs of such measures, even though there is no material difference between the costs of regular milk and Non-Dairy Alternatives such as oat, soy, almond, and coconut milk.

78.   As a direct result of Defendant's violation of the FCRA, Plaintiff and class members have suffered injury, including but not limited to the violation of their statutory rights and loss of money as a result of Defendant's illegal discrimination. Therefore, Plaintiff and the putative class members are entitled to damages and

injunctive relief.

79.     Plaintiff suffered damages as a direct result of Defendant's unlawful actions.

## COUNT III – VIOLATION OF CALIFORNIA'S UNRUH CIVIL RIGHTS ACT ELAINE CHAIX (CA)

80. The allegations contained in paragraphs 1 through 53 of the First Amended Complaint are incorporated by reference as if fully set out herein.  The named Plaintiff Chaix asserts this count on her own behalf and on behalf of the California subclass, as defined above.

81. California's Unruh Act provides, "All persons within the jurisdiction of this state are free and equal, and no matter their sex, race, color, religion, ancestry, national origin, disability, medical condition, martial status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal. Civ. Code § 51(b).

82. The Unruh Act prohibits businesses from engaging in unreasonable, arbitrary, or invidious discrimination, including through the unequal treatment of patrons.  For example, businesses may not offer discounts to some classes of patrons but require fill price from other patrons, where the price difference is based on arbitrary, class-based generalizations (such as gender).

83. The Unruh Act provides that whoever "denies, aids or incites a denial, or makes

any discrimination or distinction contrary to [the Act]" is liable for each and every offense, up to three times the amount of actual damages but in no case less than $4,000 plus attorneys' fees. *Id* at § 52(a).

84. Defendant's conduct constitutes a violation of California's Unruh Act, Cal. Civ. Code § 51, *et seq.* Defendant's practice of surcharging Non-Dairy Alternatives purchased by consumers who are lactose intolerant constitutes price discrimination in violation of the Unruh Act.

## **Intentional Discrimination**

85. The Surcharge constitutes intentional discrimination against persons with lactose intolerance. Defendant created a surcharge targeted to persons with lactose intolerance, because Defendant accommodates other customers' dietary preferences and allergies free of charge but imposes a surcharge only on persons with lactose intolerance.

86. As alleged above, Defendant provides modifications or substitutes for persons with heart conditions (caffeine-free) or diabetes (sugar-free) at no additional charge. Consumers with these dietary preferences pay no additional money for the accommodations Defendant affords to them.

87. Consumers who need Non-Dairy Alternatives because of their disability, specifically lactose intolerance, are targeted for the Surcharge because of their specific medical condition.

88. Defendant is making a choice to impose the Surcharge for necessary beverage

modifications for one class of persons with a specific disability, lactose intolerance, while at the same time not imposing any extra charge for those persons with another medical condition.  This is the essence of intentional discrimination.

89. Defendant is disproportionately profiting from their customers with lactose intolerance.

90. Defendant's Surcharge greatly exceeds the amount of any minimal difference in costs associated with Non-Dairy Alternatives.

91. Defendant's Surcharge is the same for all Non-Dairy Alternatives, making no distinction among the costs of the various different Non-Dairy Alternatives.

92. Defendant is intentionally profiting from the sale of Non-Dairy Alternatives at the expense of those persons with lactose intolerance.

## **Violations of the ADA**

93. A violation of the federal Americans with Disabilities Act (*see* 42 U.S.C. § 12111(9), 42 U.S.C. § 12182(a)) also constitutes a violation of the Unruh Act, Cal Civ. Code § 51(f).

94. Defendant is a public accommodation under the ADA, (*see* 42 U.S.C. § 12181(7)(B), and consequently Defendant is prohibited from discriminating against Plaintiff and other members of the putative class on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, and advantages offered by Defendant.

95. The ADA requires that "a public accommodation shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford good, services, facilities, privileges, advantages, or accommodations to individuals with disabilities[.]" 28 C.F.R. 36.302(a). *See also* 42 U.S.C. § 12182(b)(2)(A)(ii) (stating that discrimination includes failing to make reasonable modifications when necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities).

96. The ADA makes it "discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit form a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals[.]". 42 U.S.C. § 12182(a)(i). *See also* 42 U.S.C. § 12182(b)(i) (making it discriminatory for a public accommodation to deny disabled persons the opportunity to participate in or benefit from goods, services, privileges, advantages or accommodations).

97. The ADA requires that "a public accommodation shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities[.]" 28 C.F.R. § 36.302(a).

98. Under the ADA, if an establishment already makes alterations or modifications, or takes special orders for its customers, it must do so for disabled customer requests as well. *See* 28 C.F.R. § 36.307(a) & (b) ("A public accommodation shall order accessible or special goods at the request of an individual with disabilities, if, in the normal course of its operation, it makes special orders on request for unstacked goods, and if the accessible or special goods can be obtained from a supplier with whom the public accommodation customarily does business."). Special foods are expressly included among special orders. *See* 28 C.F.R. § 36.307(c) ("Examples of accessible or special goods includes items such as Brailled versions of books, books on audio cassettes, closed-captioned video tapes, special sizes or lines of clothing, and special foods to meet particular dietary needs.").

99. Importantly, the ADA provides that "a public accommodation may not impose a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids, barrier removal, alternatives to barrier removal, and reasonable modifications in policies, practices, or procedures, that are required to provide that individual or group with the nondiscriminatory treatment required by the Act or this part." 28 C.F.R. § 36.301.

100.    Defendant violates the ADA because, as alleged above, it fails to make modifications that are necessary to afford goods and services to persons with

lactose intolerance but instead imposes a surcharge on this group, purportedly to cover the cost of such measures.

101.    Moreover, also as alleged above, although Defendant already offers modifications to non-disabled customers free of charge, it fails to offer persons with lactose intolerance this same goods and services.

102.    Finally, Defendant's policy of charging all customers a surcharge for Non-Dairy Alternatives disproportionately affects persons with lactose intolerance, regardless of any express intent by Defendant to discriminate against this group.

103.    As a direct and proximate cause of Defendant's violation of the Unruh Act, Plaintiff Chaix and class members have suffered injury, including but not limited to the violation of their statutory rights and loss of money as the result of the illegal Surcharge.  Therefore, they are entitled to damages and injunctive relief.

104.    The aforementioned acts of Defendant were willful, wanton, malicious, intentional, oppressive, and despicable and were done in willful and conscious disregard of the rights of Plaintiff and class members, and were done by managerial agents and employees of Defendant, or with the express knowledge, consent, and ratification of managerial employees of Defendant, and thereby justify the awarding of punitive and exemplary damages in an amount to be determined at the time of the trial.

105.     Under the Unruh Act, a Plaintiff is entitled to recover actual damages and an amount up to three times the actual damages for each violation of the Unruh Act, "but in no case less than $4,000…" for each and every offense (Cal. Civ. Code § 52(a).

106.     Plaintiff and Class members are entitled to actual and treble damages for Defendant's violation of the Unruh Act.

**COUNT IV – UNJUST ENRICHMENT/RESTITUTION**

107.     The allegations contained in paragraphs 1 through 53 of the First Amended Complaint are incorporated by reference as if fully set out herein. The named Plaintiff asserts this count on his own behalf and on behalf of the National class, as defined above.

108.     The Plaintiff conferred a benefit to Defendant by allowing them to collect a surcharge in exchange for providing Plaintiff with lactose-free or vegan milk.

109.     The Defendant enriched itself at the expense of Plaintiff and the putative class members by its illegal levying of the Surcharge for Non-Dairy Alternatives.

110.     Plaintiff and putative class members continue to suffer injuries as a result of the Defendant's illegal and discriminatory behavior.  If the Defendant does not compensate the Plaintiff, it would be unjustly enriched as a result of its unlawful acts or practices.

111.     It is an equitable principle that no one should be allowed to profit from his own wrongdoing, therefore it would be inequitable for the Defendant to

retain said benefit and reap unjust enrichment.

112.     Since the Defendant unjustly enriched itself at the expense of the Plaintiff and putative class members, the Plaintiff requests the disgorgement of these illegally obtained monies.

113.     Due to Defendant's conduct, Plaintiff and the putative class members are entitled to damages according to proof, but in no event less than $5,000,000.00.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs, Donnie Negreanu and Elaine Chaix, respectfully requests that this Court enter judgment in his favor and in favor of those similarly situated, as follows:

1.     Certifying and maintaining this action as a class action, with the named Plaintiffs as designated class representative and with his counsel appointed as class counsel;

2.     A declaration that Defendant is in violation of each of the Counts set forth above;

3.     Award Plaintiffs and those similarly situated statutory, compensatory, and treble damages;

4.     Award Plaintiffs and those similarly situated liquidated damages;

5.     Order the disgorgement of illegally obtained monies;

6.     Award the named Plaintiffs a service award;

7.     Award attorneys' fees and costs; and

8.      Grant such further relief as the Court deems just and proper.

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Dated: May 1st, 2023.                  Respectfully submitted,


                                        s/Bogdan Enica
                                        Bogdan, Enica
                                        FL Bar No.: 101934
                                        66 West Flagler St., Ste. 937
                                        Miami, FL 33130
                                        Telephone: (305) 539-9206
                                        Email: bogdan@keithgibsonlaw.com

                                        Keith L. Gibson (Admitted *Pro Hac Vice*)
                                        IL Bar No.: 6237159
                                        490 Pennsylvania Avenue Suite 1
                                        Glen Ellyn, IL 60137
                                        Telephone: (630) 677-6745
                                        Email: keith@keithgibsonlaw.com


                                        *Counsel for Plaintiffs and the Putative Class*

25