**United States District Court**
**Middle District of Florida**
**Tampa Division**

DONNIE NEGREANU, individually
and on behalf of all those similarly
situated,

        Plaintiff,

v.                        No. 8:22-CV-02421-CEH-SPF

STARBUCKS CORPORATION, a
Washington Corporation,

        Defendant.

---

## <u>DEFENDANT'S MOTION TO DISMISS</u>
## <u>PURSUANT TO FED. R. CIV. P. 12(b)(2) and (6)</u>

Minh N. Vu (*Pro hac vice*)
SEYFARTH SHAW LLP
975 F St NW
Washington, DC 20004
Tel.: (202) 828-5337
mvu@seyfarth.com

Michael E. Steinberg (*Pro hac vice*)
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 1200
Boston, MA 02210
Tel.: (617) 946-8316
msteinberg@seyfarth.com

Kevin Young
FL Bar No.: 114151
SEYFARTH SHAW LLP
1075 Peachtree Street, NE
Atlanta, GA 30309
Tel.: (404) 885-1500
kyoung@seyfarth.com

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     Introduction ..................................................................................... 1

II.    Factual Allegations .......................................................................... 5

III.   Legal Standards .............................................................................. 6

       A.    Rule 12(b)(2) Motions ............................................................ 6

       B.    Rule 12(b)(6) Motions ............................................................ 6

IV.    Argument ....................................................................................... 7

       A.    This Court Lacks Personal Jurisdiction Over Chaix's Claims. ........... 7

             i.    Starbucks is Not Subject to General Jurisdiction in
                   Florida. ..................................................................... 9

             ii.   The Court Lacks Specific Jurisdiction Over Starbucks
                   Because Chaix's Claims Do Not Arise Out of Starbucks
                   Contacts with Florida .................................................. 10

       B.    Plaintiffs' ADA, FCRA, and ADA-Based Unruh Act Claims
             Fail as a Matter of Law ........................................................ 13

             i.    The ADA Does Not Require a Public Accommodation
                   to Offer Accessible Goods or Sell Them at the Same
                   Price as Non-Accessible Goods. .................................... 14

             ii.   The Starbucks Price for Beverages Made with Non-
                   Dairy Milks is Not a Prohibited Surcharge Under the
                   ADA. ....................................................................... 17

       C.    The FAC Fails to State a Claim for Intentional Discrimination
             Under the Unruh Act. .......................................................... 19

       D.    Negreanu's FCRA Claim Fails Because He Did Not Exhaust
             His Administrative Remedies .................................................. 21

       E.    The FAC Fails to State a Claim for Unjust Enrichment Under
             Florida or California Common Law. .......................................... 23

V.      Conclusion ........................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.L., by & through D.L. v. Walt Disney Parks & Resorts US, Inc.*,
469 F. Supp. 3d 1280 (M.D. Fla. 2020), *aff'd sub nom. A.L. by & through D.L., v. Walt Disney Parks & Resorts U.S., Inc.*, 50 F.4th 1097 (11th Cir. 2022) ...................................................................... 14, 15, 16

*Abadi v. Walt Disney World Parks & Resorts*,
338 So. 3d 1101 (Fla. Dist. Ct. App. 2022) ...................................... 19, 22

*Advantus, Corp. v. Sandpiper of Cal., Inc.*,
No. 3:18-CV-1368-J-34JRK, 2019 WL 4751725 (M.D. Fla. Sept. 30, 2019) ................................................................................................. 11

*Anderson v. Macy's, Inc.*,
943 F. Supp. 2d 531 (W.D. Pa. 2013) ................................................ 18

*Anthony Sterling, M.D. v. Provident Life & Acc. Ins. Co.*,
519 F. Supp. 2d 1195 (M.D. Fla. 2007) .............................................. 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................. 5, 6, 7

*Baptista v. JPMorgan Chase Bank, N.A.*,
640 F.3d 1194 (11th Cir. 2011) ........................................................ 24

*Battle v. Cent. State Hosp.*,
898 F.2d 126 (11th Cir. 1990) ............................................................ 7

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*,
582 U.S. 255 (2017) ..................................................... 11, 12, 13

*Bryant v. Hasbro, Inc.*,
No. 8:18-CV-1336-T-36CPT, 2019 WL 2211053 (M.D. Fla. May 22, 2019) (Honeywell, J.) ...................................................................... 10

*Cable/Home Commc'n Corp. v. Network Prods., Inc.*,
902 F.2d 829 (11th Cir. 1990) ............................................................ 6

*Campos v. I.N.S.,*
    32 F. Supp. 2d 1337 (S.D. Fla. 1998) ................................................................. 7, 21

*Carmouche v. Tamborlee Mgmt., Inc.,*
    789 F.3d 1201 (11th Cir. 2015) ............................................................................ 8, 9

*Chaparro v. Carnival Corp.,*
    693 F.3d 1333 (11th Cir. 2012) ................................................................................ 7

*Comet Theatre Enters, Inc. v. Cartwright,*
    195 F.2d 80 (9th Cir. 1952) .................................................................................... 25

*Cullen v. Netflix, Inc.,*
    600 F. App'x 508 (9th Cir. 2015) .......................................................................... 19

*Daimler AG v. Bauman,*
    571 U.S. 117 (2014) ............................................................................................... 7, 9

*Dare v. Cal.,*
    191 F.3d 1167 (9th Cir. 1999) ................................................................................ 18

*Del Valle v. Trivago GMBH,*
    56 F.4th 1265 (11th Cir. 2022) ...................................................................... 7, 8, 11

*Doe v. Mut. of Omaha Ins. Co.,*
    179 F.3d 557 (7th Cir. 1999) ........................................................................... 15, 16

*Doe v. Samford Univ.,*
    29 F.4th 675 (11th Cir. 2022) .................................................................................. 6

*Durell v. Sharp Healthcare,*
    183 Cal. App. 4th 1350 (2010) ............................................................................... 25

*Feldman v. BRP US, Inc.,*
    No. 17-CIV-61150, 2018 WL 8300534 (S.D. Fla. Mar. 28, 2018) .................... 12, 13

*Fin. Sec. Assur., Inc. v. Stephens, Inc.,*
    500 F.3d 1276 (11th Cir. 2007) ................................................................................ 7

*Ford v. Schering-Plough Corp.,*
    145 F.3d 601 (3d Cir. 1998) ................................................................................... 15

iv

*Future Tech. Today, Inc. v. OSF Healthcare Sys.*,
218 F.3d 1247 (11th Cir. 2000) ................................................................ 6

*Gitson v. Trader Joe's Co.*,
No. 13-CV-01333-VC, 2015 WL 9121232 (N.D. Cal. Dec. 1, 2015) .................... 17

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ................................................................... 9, 11

*Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*,
742 F.3d 414 (9th Cir. 2014) ......................................................... 19, 20

*Griffin v. Dugger*,
823 F.2d 1476 (11th Cir. 1987) ............................................................ 23

*Holly v. Clairson Indus., L.L.C.*,
492 F.3d 1247 (11th Cir. 2007) ........................................................ 18, 19

*Houston v. Marod Supermarkets, Inc.*,
733 F.3d 1323 (11th Cir. 2013) ............................................................ 18

*Jones v. Firestone Tire & Rubber Co.*,
977 F.2d 527 (11th Cir. 1992) ............................................................. 23

*Karczewski v. DCH Mission Valley LLC*,
862 F.3d 1006 (9th Cir. 2017) ............................................................. 15

*Knepfle v. J-Tech Corp.*,
48 F.4th 1282 (11th Cir. 2022) ....................................................... 10, 11

*Koebke v. Bernardo Heights Country Club*,
36 Cal. 4th 824 (2005) ................................................................... 19

*Lenox v. Healthwise of Ky., Ltd.*,
149 F.3d 453 (6th Cir. 1998) ............................................................. 15

*Lewis v. Mercedes-Benz USA, LLC*,
530 F. Supp. 3d 1183 (S.D. Fla. 2021) ...................................... 8, 11, 12, 13

*Marquette v. HomeAdvisor, Inc.*,
No. 6:20-cv-1490, 2021 WL 2942742 (M.D. Fla. Jan. 15, 2021) .................... 13

98618403v.5

*Martinez v. Cot'n Wash, Inc.*,
    81 Cal. App. 5th 1026 (2022) ............................................................................... 19, 20

*Munson v. Del Taco, Inc.*,
    46 Cal. 4th 661 (2009) ........................................................................................ 13

*Mussat v. IQVIA, Inc.*,
    953 F.3d 441 (7th Cir. 2020) ............................................................................. 8, 9

*Painter v. Blue Diamond Growers*,
    757 F. App'x 517 (9th Cir. 2018) ......................................................................... 17

*Peterson v. Cellco P'ship*,
    164 Cal. App. 4th 1583 (2008) ............................................................................ 25

*Pincus v. Am. Traffic Sols., Inc.*,
    333 So. 3d 1095 (Fla. 2022) ................................................................................ 24

*Seiferth v. Helicopteros Atuneros, Inc.*,
    472 F.3d 266 (5th Cir. 2006) ............................................................................... 11

*SkyHop Techs., Inc. v. Narra*,
    58 F.4th 1211 (11th Cir. 2023) ............................................................................. 7

*Smith v. Brevard Cnty.*,
    461 F. Supp. 2d 1243 (M.D. Fla. 2006) ............................................................... 7

*Story v. Heartland Payment Sys., LLC*,
    461 F. Supp. 3d 1216 (M.D. Fla. 2020) ............................................................... 9

*Thompson v. Orange Lake Country Club, Inc.*,
    224 F. Supp. 2d 1368 (M.D. Fla. 2002) ............................................................. 22

*Walden v. Fiore*,
    571 U.S. 277 (2014) .............................................................................................. 7

*Weyer v. Twentieth Century Fox Film Corp.*,
    198 F.3d 1104 (9th Cir. 1999) ............................................................................. 15

*Whitaker v. Tesla Motors, Inc.*,
    985 F.3d 1173 (9th Cir. 2021) ............................................................................. 19

vi

*Williams v. Eckerd Fam. Youth Alt.*,
    908 F. Supp. 908 (M.D. Fla. 1995) ............................................................ 22

*Wimberly v. Sec. Tech. Grp., Inc.*,
    866 So. 2d 146 (Fla. Dist. Ct. App. 2004) ............................................... 19

*Wyndham Vacation Ownership v. Reed Hein & Assocs., LLC*,
    No. 618CV02171GAPDCI, 2020 WL 12178190 (M.D. Fla. Jan. 7,
    2020) ................................................................................................................ 7

**Statutes**

ADA Title III ........................................................................................... 17, 18

Americans with Disabilities Act .................................................... *passim*

California Unruh Act ......................................................................... *passim*

Fla. Stat. § 48.193 (1)(a) ............................................................................ 10

Fla. Stat. § 760.11(1)-(4) ........................................................................... 21

Florida Civil Rights Act ................................................................... *passim*

**Other Authorities**

28 C.F.R. pt. 36, App'x C ......................................................................... 14

28 C.F.R. § 36.301(c) ................................................................................. 18

28 C.F.R. § 36.302(a) ................................................................................. 14

28 C.F.R. § 36.307 .................................................................... 3, 14, 15, 17

28 C.F.R. § 36.307(a) ........................................................................... 14, 17

28 C.F.R. § 36.307(c) .................................................................... 14, 17, 18

Fourteenth Amendment .............................................................................. 8

Fed. R. Civ. P. 4(k)(1)(A) ........................................................................... 7

Fed. R. Civ. P. 23 ................................................................................. 13, 23

Fla. Admin. Code R. 60Y-5.008(4)(a) .................................................. 22

vii

Fla. Admin. Code R. 60Y-5.008(4)(b) ........................................................................ 22

Fla. Admin. Code R. 60Y-5.008 (5) ........................................................................... 22

Fla. Admin. Code R. 60Y-5.008(6) ............................................................................ 22

Rule 12(b)(2) ...................................................................................................... 2, 6, 9

Rule 12(b)(6) ......................................................................................................... 2, 6

98618403v.5

## I.  <u>Introduction</u>

A decision allowing this lawsuit to move forward would have far-reaching consequences for restaurants, retailers, and their customers that the drafters of the Americans with Disabilities Act ("ADA") could never have imagined or intended.  Plaintiffs Donnie Negreanu and Elaine Chaix ("Plaintiffs") insist that the ADA requires public accommodations to charge the same price for entirely different products because their alleged disability requires it.  They claim that, under the ADA, Starbucks must charge them the same price for beverages made at their request with oat, almond, soy, or coconut milk (collectively, "Non-Dairy Milks") instead of cow's milk ("Dairy Milk") because they can only consume Non-Dairy Milks due to their alleged disability.  As a federal court of appeals has expressly held, though, Dairy Milk and Non-Dairy Milks are distinct food products.

If the Court agrees with Plaintiffs, restaurants would have to substitute lobster for shrimp if a diner claimed to be allergic to shrimp; pizzerias would have to substitute gluten-free crusts for wheat crusts for customers with celiac disease; and supermarkets would have to offer shoppers who are allergic to pesticides organic produce as a substitute for non-organic produce.  In all of these examples, the restaurants and retailers would have the following choices: (1) stop offering these more expensive ingredients/items altogether; (2) lose

substantial revenue by offering the substitutions free of charge; (3) raise prices across the board for all goods to cover the revenue loss; or, (4) face costly litigation.  And in such litigation, a federal court would have to decide whether a business can charge more for these accessible goods and, if so, set the prices that businesses must charge.  There is simply no basis in the ADA for such an untenable outcome.  In fact, the U.S. Department of Justice ("DOJ") specifically drafted the ADA regulations to prevent this situation from happening.

As set forth below, the First Amended Complaint ("FAC") must be dismissed under Rule 12(b)(2) for lack of personal jurisdiction as to Plaintiff Chaix and under 12(b)(6) for failure to state a claim as to both Plaintiffs.

Personal Jurisdiction Over Claims of Chaix.  There is no personal jurisdiction over Chaix's claims.  Chaix is a California resident whose claims arise solely from her patronage of Starbucks stores in California.  Starbucks is not subject to general personal jurisdiction in Florida courts because it is neither incorporated in Florida nor does it maintain its headquarters there.  The Florida courts also have no specific personal jurisdiction over Starbucks because Chaix's claims have no connection to Florida whatsoever.

Failure to State a Claim Under the ADA, the FCRA, or the Unruh Act.  The FAC must be dismissed under Rule 12(b)(6) because Plaintiffs' central theory of liability under the ADA (Count I) contradicts the ADA regulations and judicial

2

precedents.  Plaintiffs claim that Starbucks must sell beverages made with Non-Dairy Milks at the same prices as beverages made with Dairy Milk.  This theory, however, collides with two well-established and related principles under the ADA.  First, the DOJ has specified in its regulations that a public accommodation's general duty to make reasonable modifications to policies, practices, or procedures does not require it to offer "special foods to meet particular dietary needs," 28 C.F.R. § 36.307, such as beverages made with Non-Dairy Milks.

Second, courts in the Eleventh Circuit and elsewhere have held that the ADA does not dictate the pricing for accessible goods businesses do choose to sell.  Thus, the ADA does not require Starbucks to sell drinks with Non-Dairy Milks at all, let alone regulate the prices it charges for them.  Because Plaintiffs' ADA claims fail as a matter of law, Negreanu's claim under the Florida Civil Rights Act ("FCRA") (Count II), and Chaix's California Unruh Act claim predicated upon a violation of the ADA (Count III, ¶¶93-102), also fail.

Failure to State a Claim for Intentional Discrimination Under the Unruh Act.  Chaix's claim of intentional discrimination under the California Unruh Act (Count III, ¶¶85-92) fails because, under controlling precedent, allegations that a facially neutral policy causes discriminatory effects on a particular group, without more, are insufficient to establish intentional discrimination.

Accordingly, the FAC's allegations—namely, that the higher prices Starbucks charges for drinks made with Non-Dairy Milk in place of Dairy Milk (the "Upcharge") disparately impact persons with lactose intolerance—do not establish intentional discrimination under the Unruh Act.

<u>Failure to Exhaust Under the FCRA</u>.  Negreanu's claim under the Florida Civil Rights Act ("FCRA") fails for the additional reason that he never filed a charge of discrimination with the Florida Human Rights Commission —a jurisdictional prerequisite to bringing a civil action on an individual or class-wide basis under the FCRA.

<u>Failure to State a Claim for Unjust Enrichment</u>.  Under both Florida and California law, an alleged statutory violation alone is insufficient to state a cognizable unjust enrichment claim.  These states' appellate courts have held that an unjust enrichment claim fails as a matter of law where, as here, plaintiffs received the benefit of their contractual bargain.  Plaintiffs received the drinks they purchased and, therefore, do not state a claim for unjust enrichment.

For all of the foregoing reasons, and those set forth in more detail *infra*, Starbucks respectfully requests that this Court (1) grant the instant motion and (2) enter an order dismissing the FAC in its entirety with prejudice.

98618403v.5

## II.     <u>Factual Allegations</u>[1]

Negreanu is a resident of Pinellas County, Florida.  FAC (ECF No. 41), ¶21.

Chaix is a resident of Fresno County, California.  *Id.*, ¶22.  They claim to be

lactose intolerant and "must consume drinks that do not contain milk or milk-

based products."  *Id.*, ¶24.

According to the FAC, Negreanu ordered "coffee-based and other drinks

at Starbucks coffee shops in Florida since at least 2012 to the present."  *Id.*, ¶2; *id.*,

¶21 (Negreanu visits Starbucks in State of Florida).  Chaix ordered "coffee-based

drinks and other drinks at Starbucks coffee shops in California since at least 2016

to the present."  *Id.*, ¶¶2, 22.  The FAC contains no other allegations suggesting

that any other store locations form the basis for Plaintiffs' claims.

When Plaintiffs ordered coffee-based drinks made with milk, they

requested drinks made instead with Non-Dairy Milks.  *Id.*, ¶¶3, 31.  The FAC

alleges that Starbucks charges all customers that order such Non-Dairy Milk

drinks between $0.50 and $0.80 extra (the "Upcharge") for those products.  *Id.*,

¶¶3, 4, 32 ("A consumer will pay at least $0.50-$0.80 more for a drink at

Starbucks for Non-Dairy Alternatives."), ¶102 (alleging that Starbucks has a

"policy of charging all customers a surcharge for Non-Dairy Alternatives").

---

[1] Starbucks assumes – only for purposes of this motion -- that the well-pleaded allegations in the FAC are true and reserves the right to contest, and respond further to, the FAC's allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

III.   <u>**Legal Standards**</u>

A.   **Rule 12(b)(2) Motions**

On a Rule 12(b)(2) motion to dismiss, a plaintiff bears the burden of pleading sufficient facts to establish the exercise of personal jurisdiction over a non-resident defendant.  *See Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) ("Plaintiff's burden in alleging personal jurisdiction is to plead sufficient material facts to establish the basis for exercise of such jurisdiction."); *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990) (plaintiff must establish a prima facie case of personal jurisdiction over nonresident defendant).

B.   **Rule 12(b)(6) Motions**

"Familiar principles govern a motion to dismiss for failure to state a claim."  *Doe v. Samford Univ.*, 29 F.4th 675, 685 (11th Cir. 2022).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).  "Because the presumption of truth applies only to facts, the court may disregard labels and conclusions couched as factual allegations."  *Id.* (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks and alterations omitted).  Moreover, "[f]actual allegations that are 'merely consistent with a defendant's liability' fall short of being facially

6

plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678) (some internal quotation marks omitted).  In other words, "if allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Id.*  The Court "need not accept factual claims that are internally inconsistent[.]" *Campos v. I.N.S.*, 32 F. Supp. 2d 1337, 1343 (S.D. Fla. 1998).[2]

Finally, the Court assesses the FAC's legal sufficiency through the lens of the required elements of the claims asserted.  *See Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282–83 (11th Cir. 2007).

## IV.   <u>Argument</u>

### A.    **This Court Lacks Personal Jurisdiction Over Chaix's Claims.**

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Walden v. Fiore*, 571 U.S. 277, 283 (2014), quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)).[3]

---

[2] *See also, e.g., Smith v. Brevard Cnty.*, 461 F. Supp. 2d 1243, 1248 (M.D. Fla. 2006) (on motion to dismiss, court "need not accept internally inconsistent factual allegations"); *Anthony Sterling, M.D. v. Provident Life & Acc. Ins. Co.*, 519 F. Supp. 2d 1195, 1208 (M.D. Fla. 2007) (same); *Wyndham Vacation Ownership v. Reed Hein & Assocs., LLC*, No. 618CV02171GAPDCI, 2020 WL 12178190, at *5 (M.D. Fla. Jan. 7, 2020) (same); *cf. Battle v. Cent. State Hosp.*, 898 F.2d 126, 130 (11th Cir. 1990) ("allegations that are contradicted by other allegations in the complaint may also constitute grounds for dismissal").

[3] *See also, e.g., SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1222 (11th Cir. 2023) ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons.") (quoting *Bauman*, 571 U.S. at 125); *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1272 (11th Cir. 2022) (same).

Thus, "a federal court generally undertakes a two-step analysis to determine whether there is personal jurisdiction over a nonresident defendant." *Del Valle*, 56 F.4th at 1272. "First, the court must determine whether the plaintiff has alleged sufficient facts to subject the defendant to the forum state's long-arm statute." *Id.* "Second, if the court determines that the forum state's long-arm statute has been satisfied, it must then decide whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *Id.*

Under both the state long-arm statute and Due Process analysis, personal jurisdiction can be established in two ways: specific jurisdiction "—that is, jurisdiction over suits that *arise out of or relate to a defendant's contacts with Florida*," *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (emphasis added), or "general personal jurisdiction —that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida[.]" *Id.*

In a putative class action, each individually named plaintiff must be able to establish personal jurisdiction over the defendant. *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020) ("the named representatives must be able to demonstrate either general or specific personal jurisdiction"); *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1226 (S.D. Fla. 2021) ("A putative class representative seeking to hale a defendant into court to answer to the class must

have personal jurisdiction over that defendant just like any individual litigant must."); *Story v. Heartland Payment Sys., LLC*, 461 F. Supp. 3d 1216, 1231 (M.D. Fla. 2020) ("Even in a class action … the named representatives must be able to demonstrate either general or specific personal jurisdiction[.]") (quoting *Mussat*, 953 F.3d at 447).  Accordingly, to survive a Rule 12(b)(2) motion, Chaix must be able to establish either general or specific personal jurisdiction.  She cannot.

    ***i. Starbucks is Not Subject to General Jurisdiction in Florida.***

   For a corporation, "the paradigm forum for the exercise of general jurisdiction" is either the corporation's state of incorporation or where it maintains its principal place of business.  *Bauman*, 571 U.S. at 137.  Those are the two places the Supreme Court has identified where "the corporation is fairly regarded as at home."  *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).  *See also Carmouche*, 789 F.3d at 1204.

   Indeed, the Supreme Court in *Bauman* explicitly rejected the notion that a defendant's "engag[ing] in a substantial, continuous, and systematic course of business" in a state would be sufficient to render the corporation subject to general jurisdiction.  *Bauman,* 571 U.S. at 137-38.  Thus, the Supreme Court concluded that the maintenance of "multiple California-based facilities," a regional office in the state, multiple plants, and substantial vehicle sales within the state were insufficient to establish personal jurisdiction.  *Id.* at 123, 136-39.

These precedents establish that Starbucks cannot be subject to general jurisdiction in Florida.  Starbucks is both incorporated and maintains its principal place of business in the State of Washington.  *See* FAC ¶23.  The only other facts in the FAC concerning Starbucks contacts with Florida are that the company owns and operates retail stores in the state.  *Id.*  Those allegations do not establish general jurisdiction over Starbucks by a Florida Court.  *See Bryant v. Hasbro, Inc.*, No. 8:18-CV-1336-T-36CPT, 2019 WL 2211053, at *3 (M.D. Fla. May 22, 2019) (Honeywell, J.) (observing that general jurisdiction has been found to be lacking even where a company maintains physical store locations in Florida).

> ii.   *The Court Lacks Specific Jurisdiction Over Starbucks Because Chaix's Claims Do Not Arise Out of Starbucks Contacts with Florida.*

In order for specific jurisdiction to attach to claims against a foreign defendant, Florida's long-arm statute "requires a connection … between the enumerated activity *in Florida* [*e.g.*, operating, conducting, engaging in, or carrying on a business in the state, *see* Fla. Stat. § 48.193 (1)(a)] and the cause of action." *Knepfle v. J-Tech Corp.*, 48 F.4th 1282, 1292 (11th Cir. 2022) (emphasis added) (internal quotation marks and citation omitted).  Here, all of Chaix's claims relate to alleged injuries she suffered in California as a result of Starbucks ownership and/or operation of stores in California.  FAC ¶¶2, 3, 23.  The absence of any connection between Chaix's claims and Starbucks activities in Florida

forecloses her ability to establish specific jurisdiction under Florida's long-arm statute. *Knepfle*, *supra*; *Lewis*, 530 F. Supp. 3d at 1226.

For the same reason, the exercise of specific jurisdiction in this case would fail to comport with the Fourteenth Amendment's Due Process Clause under *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255 (2017) ("*Bristol-Myers*"). "In specific jurisdiction cases like this one, we examine whether [] the plaintiff's claims arise out of or relate to one of the defendant's contacts with the forum state[.]" *Del Valle*, 56 F.4th at 1275 (internal quotation marks and citation omitted). In *Bristol-Myers*, the Supreme Court stated that "[i]n order for a court to exercise specific jurisdiction over *a claim*, there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." 582 U.S. at 264 (quoting *Goodyear*, 564 U.S. at 919) (emphasis added) (internal quotations omitted).[4]

*Bristol-Myers* held that out-of-state residents could not join California residents to assert claims in a mass tort action in California court against an out-

---

[4] *See also Advantus, Corp. v. Sandpiper of Cal., Inc.*, No. 3:18-CV-1368-J-34JRK, 2019 WL 4751725, at *16 (M.D. Fla. Sept. 30, 2019) ("[I]f separate claims are pled, specific personal jurisdiction must independently exist for each claim and the existence of personal jurisdiction for one claim will not provide the basis for another claim.") (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006)).

98618403v.5

of-state defendant.  582 U.S. at 264-66.  It explained that the existence of other, in-state plaintiffs in the lawsuit who suffered injury in the state did not suffice to establish personal jurisdiction as to the claims of the out-of-state plaintiffs.  *Id.* at 265.  "What is needed—and what is missing here—is a connection between the forum and *the specific claims at issue*."  *Id.* (emphasis added).

Here, as in *Bristol-Myers*, Chaix is not a resident of the forum state and does not claim to have suffered any harm in that state.  *Id.*  Here, as in *Bristol-Myers*, "all the conduct giving rise to the [Chaix's] claims occurred elsewhere" (*i.e.* California).  *Id.*  Consequently, this Court in Florida cannot exercise specific jurisdiction over Chaix's claims consistent with due process.

Since *Bristol-Myers*, at least two courts in this Circuit have dismissed on personal jurisdiction grounds non-resident putative class representatives seeking to bring claims that had no connection to Florida.  In *Lewis*, the court dismissed the claims of out-of-state putative class representatives because those claims "arise from conduct that took place entirely outside of Florida.[.]" *See*, *e.g.*, *Lewis*, 530 F. Supp. 3d at 1226 & n.13.  In *Feldman v. BRP US, Inc.*, No. 17-CIV-61150, 2018 WL 8300534, at *4-*5 (S.D. Fla. Mar. 28, 2018), the court dismissed an out-of-state putative class representative for lack of personal jurisdiction, stating that "the [out-of-state putative class representative's] claims arise from conduct that took place completely outside of the forum where he seeks to bring suit."  *Id.* at

12

*5.  The relevant facts as to Chaix are precisely the same as those in *Lewis* and *Feldman*.  Accordingly, the Court cannot exercise specific personal jurisdiction over Starbucks with respect to Chaix's claims and they must be dismissed. [5]

## B.    Plaintiffs' ADA, FCRA, and ADA-Based Unruh Act Claims Fail as a Matter of Law.

At bottom, Plaintiffs' claims fail because they rest on two baseless arguments: that the ADA requires Starbucks to substitute Non-Dairy Milks for Dairy Milk free of charge as a "reasonable modification[]" to its policies, practices, or procedures, FAC ¶57, and that the failure to do so is an unlawful "surcharge."  *Id.* ¶61.  Specifically, in the FAC, Plaintiffs bring disability discrimination claims under the ADA (Count I).  Negreanu also brings an analog claim under the FCRA (Count II).  Chaix, meanwhile, brings an ADA-dependent claim under the California Unruh Act (Count III, ¶¶93-102).[6]  As discussed

---

[5] In their reply to Starbucks opposition to their Motion for Leave to File the FAC, Plaintiffs argued that the Due Process holding of *Bristol-Myers* is somehow inapplicable because this is a class action in federal court.  *See* Pls.' Repl., ECF No. 37 at 3-4 (*quoting Marquette v. HomeAdvisor, Inc.*, No. 6:20-cv-1490, 2021 WL 2942742, at *4 (M.D. Fla. Jan. 15, 2021)).  The argument lacks merit.  In *Marquette*, the court declined to extend *Bristol-Myers'* holding to strike the claims of *absent class members* in a Fed. R. Civ. P. 23 class action for lack of personal jurisdiction.  *See Marquette*, 2021 WL 2942742, at *4.  Conversely, as *Lewis* and *Feldman* observed, *Bristol-Myers* plainly applies to the analysis of whether a court may exercise personal jurisdiction over the claims of a *named* plaintiff in a putative class action, such as Chaix.  "Nothing in [*Bristol-Myers*] suggests that it does not apply to named plaintiffs in a putative class action[.]"  *Feldman*, 2018 WL 8300534, at *4 (S.D. Fla. Mar. 28, 2018) (internal quotation marks and citations omitted); *Lewis*, 530 F. Supp. 3d at 1226 n.13 (same).

[6] *See Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 672 (2009) (explaining that violation of the ADA is a theory of liability under the Unruh Act).

13

below, the DOJ sought to prevent these types of unreasonable demands by including 28 C.F.R. § 36.307 in its regulations.

### i. *The ADA Does Not Require a Public Accommodation to Offer Accessible Goods or Sell Them at the Same Price as Non-Accessible Goods.*

28 C.F.R. § 36.307(a) states that the ADA "does not require a public accommodation to alter its inventory to include accessible or special goods that are designed for, or facilitate use by, individuals with disabilities," and 28 C.F.R. § 36.307(c) defines "accessible goods" to include "special foods to meet particular dietary needs." 28 C.F.R. § 36.307(a) & (c).

In its official commentary to 28 C.F.R. § 36.307 and the reasonable modification provision cited by Plaintiffs (§ 36.302(a)), the DOJ stated: "The rule enunciated in § 36.307 is consistent with the 'fundamental alteration' defense to the reasonable modifications requirement of § 36.302." 28 C.F.R. pt. 36, App'x C. The DOJ added that "§ 36.302 *would not require* the inventory of goods provided by a public accommodation to be altered to include goods with accessibility features." *Id.* (emphasis added). In short, by explicitly including 28 C.F.R. § 36.307, the DOJ established, as a matter of law, that requiring public accommodations to provide special goods is *always* a fundamental alteration of the goods and services provided by that public accommodation. *See also A.L., by & through D.L. v. Walt Disney Parks & Resorts US, Inc.*, 469 F. Supp. 3d 1280, 1305

14

(M.D. Fla. 2020), *aff'd sub nom. A.L. by & through D.L., v. Walt Disney Parks & Resorts U.S., Inc.*, 50 F.4th 1097 (11th Cir. 2022) ("The common sense of the statute is that the content of the goods or services offered by a place of public accommodation is not regulated.") (quoting *Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 560 (7th Cir. 1999)).[7]

Plaintiffs will likely argue that they are not seeking to compel Starbucks to sell Non-Dairy Milk, but that if it chooses to do so, then it must sell it at the same price as Dairy Milk. They point to no authority for this radical concept – one that has already been rejected by this Court in a case that was affirmed by the Eleventh Circuit. In *A.L.*, this Court rejected the plaintiffs' demand that defendant Disney give them special priority access to rides on a standard ticket because of their disabilities, and said the following about the obligation to make reasonable modifications under the ADA:

> Had Congress purposed to impose so enormous a burden on the retail sector of the economy and so vast a supervisory responsibility on the federal courts, we think it would have made its intention clearer and would at least have imposed some standards. It is hardly a feasible judicial function to decide whether shoe stores should sell single shoes to one-legged persons *and if so at what price.*"

---

[7] In accordance with the principles set forth in 28 C.F.R. § 36.307, numerous other courts have also held that a public accommodation is not required under the ADA to change the mix of goods that it stocks and sells to include accessible or special goods. *See, e.g., Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1014 (9th Cir. 2017) ("…[P]laces of public accommodation are generally not required to alter their inventories by manufacturing or ordering specialty goods . . .") (internal quotation marks and citation omitted); *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1117 n.77 (9th Cir. 1999); *Doe*, 179 F.3d at 559-60; *Lenox v. Healthwise of Ky., Ltd.*, 149 F.3d 453, 456-57 (6th Cir. 1998); *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 613 (3d Cir. 1998).

A.L., 469 F. Supp. 3d at 1305 (emphasis added) (internal quotation marks and citation omitted).

The Seventh Circuit took the same position in *Doe v. Mutual of Omaha Insurance Company*, 179 F.3d 557 (7th Cir. 1999). In that case, the plaintiff argued that the defendant's insurance policy's lesser benefits for certain medical conditions violated the ADA because it discriminated against policy holders with those conditions. The Seventh Circuit disagreed, finding that the insurer had no obligation to offer equivalent policy limits for these conditions at the same price because "a policy with a $25,000 limit is a different product from one with a $1 million limit, just as a wheelchair is a different product from an armchair." *Id.* at 560. In other words, the court would not require the insurer to provide an accessible product for the same price as a non-accessible product.

The consequences of adopting Plaintiff's radical theory are far-reaching and cannot be ignored. Grocery stores and restaurants would need to lower their prices for gluten-free items to match the price of items with gluten for shoppers who cannot eat gluten. Restaurants would have to substitute lobster into a shrimp dish for customers who are allergic to shrimp. Restaurants and retailers would face a Hobson's choice: Accept claims of disability status from customers at face value (and sell products at reduced prices), or face countless lawsuits in which they would have to litigate a customer's alleged disability and

16

whether the price reduction is a fundamental alteration of the goods being sold. Courts would be flooded with such lawsuits, in which they would have to determine the appropriate price for foods and other goods needed by people with disabilities. Nothing in the ADA supports this chaos, and the DOJ included 28 C.F.R. § 36.307 in its regulations to prevent this situation from happening.

Plaintiffs' only answer to this problem is to claim that Non-Dairy Milks are mere "substitutes for milk," ECF No. 24 at 3, rather than different products. That is just wrong, and defies common sense. To the contrary, multiple federal courts have held that Dairy Milk and Non-Dairy Milk are distinct products, and that no reasonable consumer would think otherwise. *See Painter v. Blue Diamond Growers*, 757 F. App'x 517, 519 (9th Cir. 2018) (almond milk and dairy milk are "two distinct food products"); *Gitson v. Trader Joe's Co.*, No. 13-CV-01333-VC, 2015 WL 9121232, at *1 (N.D. Cal. Dec. 1, 2015) (soy milk and dairy milk were "two distinct products"). The ADA does not require Starbucks to charge the same price for different goods.

> ## ii. *The Starbucks Price for Beverages Made with Non-Dairy Milks is Not a Prohibited Surcharge Under the ADA.*

Plaintiffs cannot get around the clear language in 28 C.F.R. § 36.307(a) and (c) by branding the Upcharge a "surcharge" on the lactose intolerant. *See, e.g.,* FAC ¶61. "In order to evaluate whether a cost constitutes a surcharge that violates Title III of the ADA, a court considers whether it (1) is used to cover the

costs of ADA-mandated measures and (2) is … []a charge that nondisabled people would not incur[].”  *Anderson v. Macy's, Inc.*, 943 F. Supp. 2d 531, 545 (W.D. Pa. 2013) (citing, *inter alia*, *Dare v. Cal.*, 191 F.3d 1167, 1171 (9th Cir. 1999)).

The Upcharge satisfies neither of these criteria.  Under 28 C.F.R. § 36.307(c), Starbucks is not required to sell drinks made with Non-Dairy Milks instead of Dairy Milk *at all*; the additional price it charges for those drinks is consequently not a charge used to “cover the costs of *ADA-mandated* measures … .”  *Anderson*, 943 F. Supp. 2d at 545 (emphasis added); 28 C.F.R. § 36.301(c) (surcharges for “required” measures).  Furthermore, the Upcharge applies to all customers who order drinks with Non-Dairy Milks, and it is therefore not a charge applicable only to persons with disabilities.  *See*, *e.g.*, FAC ¶102.

In sum, the ADA does not require Starbucks to offer Non-Dairy Milks in the first place, let alone regulate the pricing for drinks made with those products in place of Dairy Milk.  The FAC thus fails to state an ADA claim as a matter of law.[8]  For the same reasons, Negreanu's FCRA claim, and Chaix's Unruh Act claim predicated upon an underlying ADA violation, must also be dismissed.[9]

---

[8] The FAC purports to seek monetary damages under the ADA.  FAC, ¶¶69 and 70.  Plaintiffs' claims for money damages under the ADA must be dismissed because private litigants cannot recover money damages under Title III.  *See Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1329 (11th Cir. 2013) (“injunctive relief … is the only form of relief available to plaintiffs suing under Title III of the ADA”).

[9] “[D]isability-discrimination claims under the FCRA are analyzed using the same framework as ADA claims.”  *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007).  Consequently,

**C.      The FAC Fails to State a Claim for Intentional Discrimination Under the Unruh Act.**

Chaix also brings an Unruh Act claim on a theory of intentional discrimination, FAC ¶¶85-92, which fails for one simple reason: As the FAC expressly alleges, all customers who order drinks with Non-Dairy Milks incur the Upcharge, not just persons with lactose intolerance.  *See id.*, ¶ 32 ("A consumer will pay at least $0.50-$0.80 more for a drink at Starbucks for Non-Dairy Alternatives."); *id.*, ¶102 (alleging that Starbucks has a "policy of charging all customers a surcharge for Non-Dairy Alternatives").

The California Supreme Court and Courts of Appeal have consistently held that policies that apply to everyone, but that have a disparate impact on a particular group, cannot be the basis for an intentional discrimination claim under the Unruh Act.  *See, e.g., Koebke v. Bernardo Heights Country Club,* 36 Cal. 4th 824, 853-54 (2005) ("A disparate impact analysis or test does not apply to Unruh Act claims.") (internal quotation marks and citation omitted); *Martinez v. Cot'n Wash, Inc.*, 81 Cal. App. 5th 1026, 1036 (2022); *Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 425 (9th Cir. 2014) ("[T]he

---

courts "consider both claims together."  *Id.  See also Wimberly v. Sec. Tech. Grp., Inc.*, 866 So. 2d 146, 147 (Fla. Dist. Ct. App. 2004); *Abadi v. Walt Disney World Parks & Resorts*, 338 So. 3d 1101, 1104 (Fla. Dist. Ct. App. 2022).  Likewise, absent a viable ADA claim, Chaix's ADA-dependent Unruh Act claim fails as a matter of law.  *See Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1175 n.2 (9th Cir. 2021) (holding that analysis of ADA claim also applies to the Unruh Act claim because the two are " coextensive"; *Cullen v. Netflix, Inc.*, 600 F. App'x 508, 509 (9th Cir. 2015) (dismissing Unruh Act claim which was based on the existence of an ADA violation).

98618403v.5

Unruh Act does not extend to practices and policies that apply equally to all persons.") (internal quotation marks and citations omitted).

In *Martinez*, the Court of Appeal stated: "A claimant may not rel[y] on the *effects* of a facially neutral policy on a particular group ... to infer solely from such effects a discriminatory intent." *Id.* (alterations and emphasis in original; last emphasis and internal quotation marks omitted). "[A]bsent an ADA violation, the Unruh Act requires allegations supporting willful, affirmative misconduct … with the *specific intent to accomplish discrimination on the basis of a protected trait*." *Id.* (internal citations and quotation marks omitted; emphasis added). The plaintiff in *Martinez* claimed the defendant engaged in intentional discrimination by having a website that could not be used by blind people and then refused to fix the website after being notified of its inaccessibility. *Martinez*, 81 Cal. App. 5th at 1034. The Court of Appeal held that those allegations were insufficient to state a cognizable claim of intentional discrimination under the Act. *Id.* at 1036.

The FAC's allegations of discriminatory intent in this case are similarly lacking. The FAC alleges that the Upcharge is "targeted to persons with lactose intolerance," FAC ¶85, because Starbucks offers decaf or sugar-free drinks that persons with other conditions (*e.g.*, heart conditions or diabetes) prefer at no extra charge. FAC, ¶86. The FAC acknowledges, though, as it must, that the

20

Upcharge is charged to everyone who orders a beverage with a Non-Dairy Milk—not only persons with lactose intolerance.  *See id.* at ¶102.

In a transparent attempt to plead around this legal bar to Unruh Act recovery, Paragraph 85 of the FAC falsely states that Starbucks "imposes a surcharge only on persons with lactose intolerance."  *See* FAC, ¶85.  The court need not accept the truth of this allegation because it is directly contradicted by the other factual claims in the FAC.  *See Campos*, 32 F. Supp. 2d at 1343; *see supra* at note 2 (collecting cases); *Compare* FAC, ¶85 *with* ¶32 *and with* FAC, ¶102.

The bottom line is that all customers who want their drink made with Non-Dairy Milks instead of dairy must pay the Upcharge.  Thus, Chaix cannot establish an intentional discrimination under the Unruh Act.

### D. Negreanu's FCRA Claim Fails Because He Did Not Exhaust His Administrative Remedies.

Even if the FAC did articulate a valid theory of disability discrimination, which it does not, Negreanu's FCRA claim fails because he never filed a complaint with the Florida Commission on Human Relations (the "FCHR") within 365 days of the alleged violation(s) and exhausted the statute's administrative remedies.  *See* Pl.'s Opp. to Def.'s Mot. to Dismiss, ECF No. 24, at 16 (arguing that Negreanu "is not required to exhaust administrative remedies").  *See* Fla. Statutes § 760.11(1)-(4).  "Prior to filing a civil action alleging discrimination in violation of the FCRA, the individual seeking relief must file a

21

complaint with the Florida Commission on Human Relations . . . within 365 days of the alleged violation and exhaust the administrative remedies provided by the FCRA." *Abadi*, 338 So. 3d at 1103.  *See also Thompson v. Orange Lake Country Club, Inc.*, 224 F. Supp. 2d 1368, 1374-75 (M.D. Fla. 2002) (explaining administrative process that is a prerequisite to filing a FRCA claim in court).  Plaintiff's failure to file an administrative complaint and exhaust administrative remedies is fatal to his FCRA claim and requires dismissal.  *See Williams v. Eckerd Fam. Youth Alt.*, 908 F. Supp. 908, 911 (M.D. Fla. 1995) (dismissing FRCA claim because the plaintiffs had not alleged that they filed a charge with the FCHR).

Negreanu claims that he is excused from the FCRA's exhaustion requirement because the FCHR purportedly "cannot grant class-wide injunctive relief" and the administrative remedy is therefore inadequate.  ECF No. 24 at 17. He is wrong.  The FCHR's procedural regulations expressly contemplate and permit claimants' assertion of class claims.  *See* Fla. Admin. Code R. 60Y-5.008(4)(a)(petition for relief filed by complainant "may include an allegation that the respondent has acted or refused to act on grounds generally applicable to a class"); *id.*, R. 60Y-5.008(4)(b), (5), (6) (setting forth procedures for FCHR to award class-wide relief and issuance of notice to members of certified class); *id.*, R. 60Y-10.005 (adopting, *inter alia*, class action procedural rules in public accommodations cases).

98618403v.5

Moreover, in this Circuit, a plaintiff seeking to represent a Rule 23 class under a civil rights statute must first satisfy the statute's administrative filing requirements.  *See Jones v. Firestone Tire & Rubber Co.*, 977 F.2d 527, 531 (11th Cir. 1992) ("One who seeks to represent a class in a private Title VII suit … must satisfy the procedural requirements of Title VII."); *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987) ("the legitimacy of a private Title VII suit brought on behalf of a class depends upon" the existence of a named plaintiff "who has satisfied the procedural requirements" of the statute).

### E.     The FAC Fails to State a Claim for Unjust Enrichment Under Florida or California Common Law.

Under both Florida and California[10] law, recovery for unjust enrichment is unavailable where the plaintiff received the expected benefit of her bargain. Consequently, Plaintiffs' claims for "Unjust Enrichment/Restitution," FAC, ¶¶107-113 (Count IV), fail.  Their sole basis is the alleged illegality (presumably under the ADA, the FCRA, and the Unruh Act) of the Upcharge.  FAC, ¶109. The FAC expressly alleges, though, that the Upcharges Plaintiffs paid to Starbucks were "in exchange for providing" them with "lactose-free or vegan

---

[10] It is unclear that Chaix is asserting an unjust enrichment claim under Count IV of the FAC; nonetheless, Starbucks assumes for the sake of this analysis that Chaix does intend to assert this claim under California law.

milk" in their drinks rather than Dairy Milk. *Id.*, ¶108. In other words, Plaintiffs received the benefit of their bargained-for exchange.

The Florida Supreme Court has held that an alleged statutory violation is not sufficient to state a claim for unjust enrichment where the defendant "gave value in exchange" for the charge at issue. *See Pincus v. Am. Traffic Sols., Inc.*, 333 So. 3d 1095, 1097 (Fla. 2022). In *Pincus*, the Supreme Court of Florida was asked to determine whether a plaintiff stated a claim for unjust enrichment based on a municipality's charge of a "convenience fee" for making online payments. *Id.* at 1097. The plaintiff argued the fee violated certain Florida statutes. *Id.* at 1096-97. The court held that the plaintiff's complaint failed to state an unjust enrichment claim because "even if the fee is prohibited under one or more of these statutes, [the defendant's] retention of the fee is not inequitable because [the defendant] gave value in exchange". *Id.* at 1097-98. *See also Baptista v. JPMorgan Chase Bank, N.A.*, 640 F.3d 1194, 1198 n.3 (11th Cir. 2011) (plaintiff's unjust enrichment claim based on alleged illegality of bank's check-cashing fee failed because the defendant gave adequate consideration to the plaintiff). *Pincus* is controlling here. Negreanu obtained the Non-Dairy Milk drinks he ordered, and thus his Florida law unjust enrichment claim fails.

Chaix also fails to state a claim for unjust enrichment. Under California law, "[t]here is no equitable reason for invoking restitution *when the plaintiff gets*

24

*the exchange which he expected.*"  *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008) (quoting *Comet Theatre Enters,, Inc. v. Cartwright*, 195 F.2d 80, 83 (9th Cir. 1952)) (emphasis added); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1371 (2010) (same).  In *Peterson*, the plaintiffs claimed that they were entitled to recover insurance premiums they paid because the defendant was unlicensed, in violation of the Insurance Code.  164 Cal. App. 4th at 1587.  The plaintiffs argued that the defendant's retention of commissions was therefore "unlawful" and "illegal[]."  *Id.* at 1591.   The Court of Appeal held that these allegations were insufficient because "plaintiffs received the benefit of the bargain[,]" *id.* at 1593, namely, "the bargained for insurance at the bargained for price."  *Id.* at 1591.  The same is true here:  Chaix admits that she received the Non-Dairy Milk drinks she ordered "in exchange" for her payment of the Upcharge.  FAC, ¶108.  Thus, there has been no unjust enrichment.

## V.   Conclusion

For the reasons stated herein, Starbucks respectfully requests that this Court (1) grant its Motion to Dismiss and (2) enter an order dismissing the FAC in its entirety with prejudice and no leave to amend.

25

Dated: September 21, 2023

/s/ Minh N. Vu

Minh N. Vu (*Pro hac vice*)
SEYFARTH SHAW LLP
975 F St NW
Washington, DC 20004
Tel.: (202) 828-5337
mvu@seyfarth.com

Michael E. Steinberg (*Pro hac vice*)
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 1200
Boston, MA 02210
Tel.: (617) 946-8316
msteinberg@seyfarth.com

Kevin Young
FL Bar No.: 114151
SEYFARTH SHAW LLP
1075 Peachtree Street, NE
Atlanta, GA 30309
Tel.: (404) 885-1500
kyoung@seyfarth.com

**Certificate of Service**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF and paper copies will be sent to any persons indicated as non-registered participants on September 21, 2023.

*/s/ Minh N. Vu*
Minh N. Vu

**Local Rule 3.01(g) Certification**

I hereby certify that, on September 21, 2023, Defendant's counsel conferred with counsel for Plaintiff by videoconference regarding the issues raised in the instant motion.  The parties were unable to reach agreement regarding resolution of all or some of the issues raised in this motion.

*/s/ Minh N. Vu*
Minh N. Vu

Dated: September 21, 2023

27

98618403v.5