**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

DONNIE NEGREANU and ELAINE
CHAIX, individually and on behalf of all          Case No.: 8:22-cv-02421-CEH-SPF
those similarly situated,

                                    Plaintiffs,

v.

STARBUCKS CORPORATION, a
Washington Corporation,

                                    Defendant.

_____

_____

**PLAINTIFFS' RESPONSE MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED
COMPLAINT**

_____

Starbucks discriminates against Plaintiffs by levying a surcharge for non-dairy alternatives that Plaintiffs have no choice but to pay solely because of their disability. Starbucks singles out Plaintiffs, and many others with the same disability, and asks them to pay a surcharge for non-dairy alternatives when it does not impose a surcharge on other modifications and alternatives. This conduct is at the heart of the protections afforded by the ADA, as amended in 2008, and state discrimination laws.

Defendant's doomsday scenario in which a ruling for Plaintiffs will require millions of businesses to alter their food and beverage offerings and the prices charged is unfounded. Plaintiffs are not claiming that the Court should set the price of Defendant's beverages. Plaintiffs are not claiming that Defendant is required to serve non-dairy alternatives such as soy, oat, coconut or almond "milk". Plaintiffs are not asking the Court to tell Defendant how to make its coffee drinks and beverages. Plaintiffs are not asking the Court to use the ADA to change the mix of goods that Defendant stocks and sells to include any accessible or special goods - Defendant already stocks and sells non-dairy alternatives and promotes those products on its website.  Defendant effectively argues that even the inclusion of the word "surcharge" in a decision under the ADA would open the flood gates to uncontrolled litigation, and economic disaster. This is not the case. Plaintiffs simply request that Starbucks does not impose a surcharge on their disability.

Plaintiffs suffer from lactose intolerance, a chronic disorder with potentially severe health consequences, impacting the major life activities of eating and digestion. The cause of lactose intolerance, lactase deficiency can be congenital, the result of

progressive and physiological decline of lactase enzyme activity or induced by small intestine disease or injury such as gastroenteritis, celiac disease, inflammatory bowel disease, chemotherapy, and antibiotics treatment[1]. Persons with this disability must avoid lactose, a sugar found exclusively in milk. Over time, lactose-restriction may induce insufficiency, potentially resulting in decreased bone mineral density, anemia, and neuropathy.

The ADA was amended in 2008 with the intent to expand, not limit, the definition of what constitutes a disability. The Justice Department issued new guidelines in 2016 to include the ADA amendments. Most of the case law cited in the Motion to Dismiss (Dkt. 54), is based on pre-amendment reading of the statute. Since 2016, Courts have been favorable to an expansion of ADA rights and Congressional intent on this issue is supportive.

Plaintiffs' claims are based simply on the fact that Defendant's surcharge for non-dairy milk alternatives is discriminatory against persons with lactose intolerance. If Defendant chooses to offer such substitutes for milk, it denies Plaintiffs a reasonable accommodation when it charges extra for such substitutes, even if the cost for the substitutes is similar to the cost of milk. Defendant's conduct of imposing a surcharge[2] on lactose-free drinks evidences an obvious attempt to profit from a vulnerable class of

---

[1] Bobbi B Laing, Anecita Gigi Lim & Lynnette R Ferguson, *A personalised dietary approach—a way forward to manage nutrient deficiency, effects of the western diet, and food intolerances in inflammatory bowel disease*, 11 Nutrients1532 (2019).

[2] "The surcharge is the same for all Non-Dairy Alternatives, making no distinction among the costs of the various different Non-Dairy Alternatives." (FAC ¶ 91.). The surcharge increased during the class period from $0.50 in 2018 to $0.80 in 2023.

consumers precisely because of their medical condition. Starbucks (the largest coffee chain in the world) has acknowledged that the surcharge is not reasonable, as it eliminated the surcharge for non-dairy alternatives in many of its international stores. In the U.S., Defendant charges the illegal surcharge for non-dairy alternatives substituted into its beverages and served at its retail establishments. This practice is a clear violation of the ADA, the Unruh Act, Florida Civil Rights Act, and unjustly enriched Defendant.

## I.  STATEMENT OF FACTS

As recognized by the 2008 amendments to ADA, lactose intolerance is a disability that makes it difficult to digest lactose. (Plaintiffs' First Amended Complaint ("FAC"), ¶ 28). Plaintiffs have received medical treatment related to their lactose intolerance, including an emergency room visit, and been advised by a medical physician not to consume milk-based products. (FAC ¶¶ 26,27.). Because of their lactose intolerance, Plaintiffs must order drinks that substitute milk for non-dairy alternatives at Defendant's stores. (FAC ¶ 31.). Plaintiffs' lactose intolerance limits the major life activities of their life including digestion, drinking and consuming milk-based products.  (FAC ¶¶ 66, 67.).

Defendant's standard offering in most drinks and beverages is 2% cow's milk. (FAC ¶ 8.).  Defendant will substitute some other types of milk including whole milk, fat-free skim milk and breve for the standard 2% milk in its beverages with no additional charge. (FAC ¶ 9.). Defendant also modifies its regular beverage offerings to make caffeine-free beverages at no additional charge for persons with hypertension

and to make sugar-free drinks for people with diabetes. (FAC ¶¶ 11, 12.). Throughout the class period, Defendant charged a Surcharge to its customers that were lactose intolerant to substitute Non-Dairy Alternatives for milk in its beverages. (FAC ¶¶ 3, 4.). Defendant's Surcharge is the same for all Non-Dairy Alternatives, in a range between $.50-$.80, during the class period increasing over time. (FAC ¶¶ 3, 4, 91.).

There is no specific experience or extra work needed to substitute non-dairy alternatives such as soy, almond, coconut, or oatmilk in place of 2% milk for those persons with lactose intolerance. (FAC ¶ 13).. Defendant has eliminated the surcharge non-dairy alternatives at many of its international locations. (FAC ¶ 7.).

## II. <u>LEGAL STANDARD</u>

In deciding a motion to dismiss under Rule 12(b)(6), the Court is required to accept plaintiff's allegations as true and view the complaint in the light most favorable to the plaintiff. *Timson v. Sampson*, 518 F. 3d 870, 872 (11th Cir. 2008). A complaint need only provide "a 'short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the claim in and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 554 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). To survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face." *See Twombly*, 550 U.S. 554, 570 (2007). Also, under Rule 12(b)(2), the allegations of the complaint, except insofar as controverted by opposing affidavits, must be taken as true, and all conflicts in the facts must be resolved in favor of the plaintiffs. C. Wright,

A. Miller & M. Kane, Federal Practice and Procedure §§ 1351, 1363 (1969 & Supp.1984). No affidavits were presented by Starbucks.

## III.   ARGUMENT

### 1. THIS COURT HAS JURISDICTION OVER STARBUCKS TO ADJUDICATE THE CLAIMS IN THE FIRST AMENDED COMPLAINT

This Court has original jurisdiction over Starbucks to adjudicate the claims brought by Plaintiff Negreanu in his original Complaint. "[O]nce a court has original jurisdiction over some claims in an action, it may exercise supplemental jurisdiction over additional claims arising from the same case or controversy." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 546, 125 S. Ct. 2611, 2613, 162 L. Ed. 2d 502 (2005).

Starbucks relies heavily on *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Ctny.,* 582 U.S. 255 (2017) a case about applicability of state law in mass tort context. However, its reliance is misplaced. The Middle District of Florida, following the precedent in the Eleventh Circuit made it clear that "[c]onsistent with the majority of courts in this district, this circuit, and elsewhere, this Court will not extend *Bristol-Myers* to class actions." *Marquette v. HomeAdvisor, Inc.,* 620CV1490ORL31EJK, 2021 WL 2942742, at *4 (M.D. Fla. Jan. 15, 2021) "The factual differences between a […] class action and a state-court mass tort suit counsel against applying *Bristol-Myers* here." *Id.*

### 2. PLAINTIFFS STATE A CLAIM FOR VIOLATION OF THE ADA

Title III of the ADA provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). A plaintiff states a cause of action for violation of the ADA where he alleges that (1) he is disabled, (2) defendant is a private entity that owns, leases, or operates a place of public accommodation, and (3) he was denied a public accommodation by defendant because of his disability. *Hoewischer v. Cedar Bend Club, Inc.*, 877 F. Supp.2d 1212, 1220 (M.D. Fla. 2012). Plaintiffs have alleged facts showing that he has a disability under the ADA. Moreover, Defendant is a place of public accommodation within the meaning of the ADA. *See* 42 U.S.C. § 12181(7)(B). (FAC ¶ 56.).[3] Plaintiffs were denied a public accommodation by Defendant because of their disability.  Plaintiffs sustain their burden to state a cause of action under the ADA.

### a.  The 2008 Amendments were Designed to Expand the Scope of ADA

The American with Disabilities Act (ADA) was amended in 2008. The clear Congressional intent of the amendments to the ADA ("ADAAA")[4] was to expand the scope and broaden the disabilities that are included within the ADA's protections. Section 3 of the ADA was amended to include the following language under Section 4, Rules of Construction Regarding the Definition of Disability: (A) the definition of disability in this Act shall be construed in favor of broad coverage of individuals under

---

[3] Defendant does not challenge that it is a place of public accommodation and subject to the ADA's requirements. Therefore this response will address requirements (1) and (3).

[4] Any reference to ADA in the Complaint or this Response, is a reference to the statute in force as of the date of the Complaint, which is amended by the ADAAA.

this Act, to the maximum extent permitted by the terms of this Act. *See* 42 U.S.C. 12102(4)(A) (FAC ¶ 64). The ADAAA was passed to restore the intent and protections of the Americans with Disabilities Act of 1990 and reject the United States Supreme Court decisions that had been interpreted by Congress as too narrowly decided as to the definition of what is included as a disability under the ADA. (FAC ¶ 62.). Specifically, the ADAAA was passed to negate rulings by the United States Supreme Court in 1) *Sutton v. United Airlines, Inc.*, 527 U.S. 471 (1999); and 2) *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002), both of which Congress believed construed the definition of disability under the ADA as too narrow. (*Id*.).

Plaintiffs' lactose intolerance impacts the major life activities of digestion, eating and drinking.  The ADA, and 7 *CFR*, Section 15b, define a person with a disability as any person who has a physical or mental impairment which substantially limits one or more major life activities, has a record of such impairment, or is regarded as having such impairment. Major life activities are broadly defined and include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. Major life activities also include the operation of major bodily functions, including but not limited to, functions of the neurological, digestive, or respiratory systems.[5] A physical or mental impairment does not need to result in a severe, life-threatening reaction to be

---

[5] *Questions and Answers about the Department of Justice's Final Rule Implementing the ADA Amendments Act of 2008.* https://archive.ada.gov/regs2016/adaaa_qa (visited Jan. 26, 2023).

considered a disability. It is sufficient that the impairment limits a major life activity. For instance:

> Digestion is an example of a bodily function that is a major life activity. A participant whose digestion is impaired by a lactose intolerance may have a disability regardless of whether consuming milk causes the participant severe distress.[6]

The cases cited by Defendant finding that lactose intolerance is not covered by the ADA are all decided pre-ADAAA and interpret the version of the ADA which did not include "eating" or "major bodily functions "as being major life activities.

### b. Plaintiffs are Disabled Under the ADA as amended by ADAAA

Courts around the country found that lactose intolerance is a disability under the ADA, as amended by ADAAA, and that it impacts a major life activity.  *See Hebert v. CEC Entm't, Inc.*, 6:16-CV-00385, 2016 WL 5003952, at *1 (W.D. La. July 6, 2016) (report and recommendation adopted); *see also See Harris v. Adams*, No. A 157443, 2020 Cal. App. Unpub LEXIS 6432, at *16-17 (October 1, 2020). In *Hebert,* the district court denied Defendant's motion to dismiss, finding that the plaintiff's allegations regarding their son's eating dairy products may cause an anaphylactic reaction that could result in death.  The Court found that "[t]he statute itself states that, to be disabled under the ADA, a person must have a 'physical or mental impairment that substantially limits one or more of the major life activities.'" *See Hebert*, 2016 WL 5003952, at *1.  Plaintiffs alleged that if their son eats **dairy products**, he may have an anaphylactic

---

[6] California Department of Education, *Modifications to Accommodate Disabilities*, https://www.cde.ca.gov/ls/nu/cc/mbcacfp082017sfsp022017.asp (visited Jan. 26, 2023).

reaction that could result in death. Thus, they have alleged that he has a physical impairment that restricts him from eating the way most people in the general population eat; consequently, they have alleged that he is disabled as that term is defined in the ADA. These allegations are sufficient to overcome the defendant's first challenge to the sufficiency of the complaint.

In *Harris*, refusing service to a customer because of her lactose intolerance violates California's Unruh Act, an anti-discrimination statute similar to the ADA. Lactose intolerance is clearly a personal characteristic similar to a physical disability. (*Harris*, supra, 52 Cal.3d at p. 1160 ["The categories [mentioned in the Act] involve personal as opposed to economic characteristics—a person's geographical origin, physical attributes, and personal beliefs."].) *Harris v. Adams*, No. A 157443, 2020 Cal. App. Unpub LEXIS 6432, at *16-17 (October 1, 2020).

### c.  The ADA Prohibits Surcharges Such as Those Charged by Defendant

Plaintiffs allege that they were denied reasonable public accommodation by Defendant because of his disability. The ADA requires that a "public accommodation shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities[.]" 28 C.F.R. § 36.302(a) (FAC. ¶ 75). *See also* 42 U.S.C. § 12182(b)(2)(A)(ii) (making it discriminatory to fail to make reasonable accommodations when necessary to afford goods, services, facilities, privileges, or accommodations to disabled persons).

The principal dispute in this case is whether Defendant's policy of surcharging

persons with lactose intolerance for non-dairy alternatives is discriminatory[7]. Defendant does not cite to any cases permitting such a surcharge to persons with a disability. And, indeed, the law is to the contrary. Importantly, the ADA provides that a "public accommodation may not impose a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids […] and reasonable modifications in policies, practices, procedures, that are required to provides that individual or group with the nondiscriminatory treatment required by the Act or this part." 28 C.F.R. § 36.301.

A surcharge on customers with celiac disease who ordered from P.F. Chang's gluten-free menu items violates the ADA. *See Phillips v. P.F. Chang's China Bistro, Inc.*, No. 5:15-cv-00344, 2015 WL 7429497 (N.D. Cal., Nov. 23, 2015). In *Phillips*, the plaintiff contended that P.F. Chang's China Bistro ("P.F. Chang's") discriminated against customers with celiac disease "by charging $1.00 more for some gluten-free menu items than for comparable non-gluten-free menu items." *Id*. at *1. The Court in *Phillips* found that "the Plaintiff had stated an Unruh Act claim because the Plaintiff alleged that P.F. Chang's "created an entirely separate—and higher priced—gluten-free menu targeted to persons with celiac disease," that P.F. Chang's "direct[ed] customers with celiac disease to the gluten-free menu rather than offering to make modifications for celiac customers the way [P.F. Chang's] does for other

---

[7] The Defendant claims that the surcharge is not a surcharge but the actual price of goods purchased. That interpretation would value 1oz of almond, soy or coconut "milk" at $0.80 ($102.40 per gallon) and 1oz of regular milk at $0.00 ($0.00 per gallon). Regardless, this is an issue of fact not to be determined at the pleading stage.

customers," and that "the price differential between the regular-menu items and their gluten-free-menu equivalents [was] the same across the board." *Id.* at *4. Accordingly, the district court found that the plaintiff in *Phillips* adequately alleged that "P.F. Chang's d[id] not provide 'full and equal' accommodations or services to those suffering from celiac disease" and that, from these facts, "one c[ould] reasonably infer that P.F. Chang's intentionally discriminate[d] by targeting customers with celiac disease." *Id.* at *4-6.

Defendant's own website has a section entitled "Customizing Beverages at Starbuck's Stores".[8] On its website, there is a sub-section with the header "Select your milk", which states as follows: "Customers can choose from whole, 2% milk or nonfat milk, or non-dairy alternatives such as soy, coconut or almond." There is **no** reference anywhere on the website to the surcharge for non-dairy alternatives. Defendant induces customers such as Plaintiffs to "customize" their beverages but selectively imposes a surcharge on all drinks that don't contain lactose. Similar to *Phillips*, supra, 2015 WL 7429497, the price differential between the lactose-containing menu items and their lactose-free equivalents is the same across the board. The surcharge is the same for all Non-Dairy Alternatives. (FAC ¶ 91.)

Defendant's website contains a "Starbucks Beverage Health and Wellness Fact Sheet" that contains similar language indicating customer's milk choices but failing to

---

[8] *See* https://stories.starbucks.com/press/2020/customizing-beverages-at-starbucks-stores-2/- "Customizing Beverages at Starbucks' Stores." (last visited 01/25/2023).

state the surcharge for non-dairy alternatives[9]. Starbucks argument that lattes made with almond milk, for example, and lattes made with 2% milk are two different products contradicts its own website, its phone application and the information conveyed by its baristas. According to Starbucks, the way you can "customize" your beverage is by: (1) asking for Starbucks Blonde Espresso: (instead of the traditional Starbucks Signature Espresso baristas use), (2) selecting your milk: Customers can choose from whole, 2% milk or nonfat milk, or non-dairy alternatives such as oat milk, soymilk, coconut milk and almond milk." (3) asking for fewer pumps of syrup, or by trying a sweetener substitute.[10] To note, the only extra charge imposed on customers is for customizing their "milk" by selecting "non-dairy alternatives."

Defendant's assertion that it is not required to accommodate persons with lactose intolerance by providing non-dairy alternatives without imposing a surcharge is incorrect.  As discussed above, Defendant regularly provides modifications to non-disabled customers free of charge (i.e., sugar-free or caffeine-free, drinks). Defendant's failure to offer the same benefit to persons with lactose intolerance (except for a surcharge) expressly constitutes discrimination under the ADA. *See* 42 U.S.C. § 12182(a)(i).

Defendant's assertion that a surcharge is reasonable because non-dairy alternatives costs more is neither true nor relevant at the pleading stage.  Whether

---

[9] *See* https://stories.starbucks.com/uploads/2021/03/Starbucks-Beverage-Health-and-Wellness-Fact-Sheet-February-2021.pdf (last visited 01/25/2023).

[10] *See Supra* FN 8.

providing non-dairy alternatives to customers for the same price as regular 2% milk would place an undue burden on Defendant is an affirmative defense that Plaintiffs are not required to plead and presents and issue of fact. *See Sunny Corral Mgmt., LLC v. Value Dining Inc.*, 08-60072-CIV, 2008 WL 5191466, at *2 (S.D. Fla. Dec. 10, 2008); *see also Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (requires a fact-intensive inquiry not appropriate on a motion to dismiss).

Defendant's assertion that Plaintiffs' claims will cause the Court to effectively set the price of all milk and milk alternatives is without foundation.  Milk and alternatives sold in grocery stores and other locations are stand-alone products.  They are sold in separate containers with separate branding, separate ingredients and separate pricing. There are numerous factors that could go into pricing milk products sold at retail. Plaintiffs are not requesting the Court to set the price of these products.

Starbucks argues in its Motion that a latte with 2% milk, a latte with whole milk, a latte with vanilla sweet cream and a latte with oatmilk are different products, which is not true.  Defendant's reliance on *Painter v. Blue Diamond Growers,* 757 F. App'x 517, 519 (9th Cir. 2018) is misplaced. That case is a mislabeling case and finds that a reasonable consumer cannot find that "almond milk" is the same as milk by the simple use of the word "milk," and that the two products have different nutritional profiles. *Id.* For example one product contains lactose, the other one does not.  Similarly, *Gitson v. Trader Joe's Co.*, No. 13-CV-01333-VC, 2015 WL 9121232, at *1 (N.D. Cal. Dec. 1, 2015) only looks at the word "soymilk" and finds that "people drink soymilk in lieu of cow's milk. *citing Ang v. Whitewave Foods Co.,* 2013 WL 6492353, at *4 (N.D.Cal. Dec.

10, 2013. *Id* (finding that that soymilk and cow's milk are substitutes in people's diets).

Starbucks does not sell stand-along milk products. Instead, Starbucks sells blended coffee beverages that, among other ingredients, include some type of milk. Starbucks is specifically allowing the customers to substitute the ingredients in their craft beverages and providing various options (*Supra* pg. 6). Defendant is free to set the price of its drinks and beverages sold to consumers.  Defendant is not free to impose a surcharge for non-dairy alternatives that Plaintiffs, and others similarly situated, must pay because of their disability. Defendant's surcharge for non-dairy alternatives targets disabled persons such as Plaintiffs.

Defendant relies heavily on *A.L. by and through D.L. v. Walt Disney Parks and Resorts US, Inc.*, 900 F.3d 1270 (11th Cir. 2018) for the proposition that the Court cannot dictate pricing for goods such as milk and that the ADA does not require public accommodations to sell accessible goods or special goods. Its reliance on the *A.L.* decision demonstrates Defendant's misunderstanding of Plaintiffs' allegations. First, Plaintiffs are not asking this Court to set the price of Starbucks beverages, nor does Plaintiffs claim that Starbucks is required to lower its prices for beverages made with non-dairy alternatives for those with lactose intolerance.  However, Plaintiffs are claiming that Starbucks cannot charge a different, or higher, price to those persons with lactose intolerance than the price charged to those persons without the need to for non-dairy alternatives.

Defendant cites *Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 560 (7th Cir. 1999) for the proposition that "a wheelchair is a different product from an armchair." While

this statement standing alone is true, it completely misses the point of Plaintiffs' claims. A wheelchair and an armchair are different types of products sold to consumers. The regular milk and non-dairy alternatives at issue here are mere ingredients, or parts of, a separate and distinct product, in this case a cappuccino or latte crafted beverage sold by Starbucks. The regular milk and non-dairy alternatives at issue here are not separate and distinct products in the same way a wheelchair or an armchair are separate and distinct products. Plaintiffs' allegations are clear that the Non-Dairy Alternatives at issue here are not separate and distinct products sold in Defendant's stores and Defendant's attempt to characterize them as such is unpersuasive.

The ADA does not require provision of different goods or services, just nondiscriminatory enjoyment of those that are provided. *Anderson v. Macy's, Inc.,* 943 F. Supp. 2d 531, 546 (W.D. Pa. 2013). In *Anderson*, there was no allegation that the department store made any modifications for disabled persons. *Id.* at 535. Nor did the plaintiff in *Anderson* allege that the plus-size clothing was directed at disabled persons, merely that it happened to affect her as a disabled person.[11] Plaintiffs are not claiming that Starbucks is required to offer non-dairy alternatives, only that if it does offer non-dairy alternatives, it cannot impose a surcharge on people with lactose intolerance.

d. **Plaintiffs' First Amended Complaint States an Independent Violation of the Unruh Act Based on Defendant's Intentional Discrimination Against Persons with Lactose Intolerance.**

---

[11] The Court in *Anderson* dismissed the case because it found the plaintiff lacked standing to assert her claims. *Anderson* at 541. Consequently, the Court's discussion of whether the plaintiff could state a claim is mere dictum.

To allege a violation of the Unruh Act independent of the ADA, Plaintiff Chaix need only allege facts showing "(1) she was denied the full and equal accommodations, advantages, facilities, privileges, or services in a business establishment; (2) her disability was a motivating factor for this denial; (3) defendant denied Plaintiff the full and equal accommodations, advantages, facilities, privileges, or services; and (4) defendant's wrongful conduct caused Plaintiff to suffer injury, damage, loss or harm." *See* CACI § 3020; *Wilkins-Jones*, 859, F.Supp.2d, 1039, 1048-51.

Plaintiff Chaix has established her prima facie case here.  First, Plaintiff alleges she was denied the full and equal accommodations, advantages, facilities, privileges, or services in Defendant's business. (FAC ¶¶ 88,100.). The accommodation, advantage, facility, privilege, or service at issue here is Defendant's policy and practice of accommodating other customers' dietary preferences upon request and free of charge by making modifications to Defendant's beverages.   (FAC ¶¶ 85-86.). Defendant denied the full and equal enjoyment of this accommodation by requiring Plaintiff to pay the surcharge for Non-Dairy Alternatives required by her disability. (FAC ¶87.).

Second, Plaintiff alleges facts showing that the Plaintiff's disability was a motivating factor for the denial of the accommodation.  Specifically, Plaintiff alleges that (a) Defendant offers modifications free of charge to customers without lactose intolerance, i.e. whole milk, fat-free milk, caffeine-free and sugar-free (FAC ¶¶ 85-86.); (b) the price differential of the Surcharge is the same no matter which Non-Dairy Alternative is substituted, i.e. there is no difference between the extra charge for soy,

almond, oat or lactose-free alternatives (FAC ¶ 91.); and c) the Non-Dairy Alternative Surcharge is not based on the additional cost to Defendant of preparing the beverage with the Non-Dairy Alternative substituted (FAC ¶¶90-91.).  *See Abernathy v. Valley Medical Center*, 2006 WL 1515600, at *3 (W.D. Wash., May 25, 2006) (holding that plaintiff could establish intentional discrimination where defendant failed to provide plaintiff with a service that defendant "routinely" provides others.)

Third, it was Defendant that denied Plaintiff the full and equal enjoyment of this benefit because the complained-of conduct occurred at Defendant's retail stores and pursuant to Defendant's policy.  (FAC ¶¶ 3, 85-92.).  Fourth, Defendant's wrongful conduct caused Plaintiff to suffer injury, damage, loss or harm – namely, the cost of the Surcharge.  (FAC ¶¶ 92, 106.).  If the test to determine whether a business's conduct is discriminatory comes down to whether a good or service is the same or different, then this inquiry cannot be made at the pleading stage but by the trier of fact. The facts alleged are more than enough to establish a prima facie for discrimination under the Unruh Act.  *See Chuang v. Univ. Cal. Davis Bd. Of Trs.*, 225 F.3d 1115, 1124 (9th Cir. 20000 (observing that "[t]he proof required to establish a prima facie case is minimal and does not even need to rise to the level of a preponderance of the evidence.")

In an attempt to minimize Plaintiff's allegations supporting Defendant's intentional discrimination, Defendant mischaracterizes Plaintiff's allegations as false. (*See* Def. Mot, p. 21).  Defendant's argument does not include the entire allegation and takes Plaintiff's allegation out of context.  It is clear from the allegations that Plaintiff

is referring to the surcharge being levied on persons with lactose intolerance as compared with substitutes for persons with other disabilities such as heart conditions and diabetes who need substitutions for caffeine-free and sugar-free at no additional cost.  (FAC, ¶¶ 85-86.).  Defendant's argument that Plaintiff's allegations are false is contradicted by a plain reading of the entire paragraph.

### 3. PLAINTIFF NEGREANU STATES A VALID CLAIM FOR VIOLATIONS OF THE FLORIDA CIVIL RIGHTS ACT

Plaintiff Negreanu is not required to exhaust administrative remedies before filing his Complaint with this Court. Both under Federal and Florida law, Courts will not require exhaustion of remedies when the administrative remedy is inadequate because it does not exist or would not provide relief commensurate with the claim. *Panola Land Buyers Association v. Shuman*, 762 F. 2d 1550, 1556 (11th Cir. 1985).  In determining whether exhaustion is required, federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion. "[A]dministrative remedies need not be pursued if the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further." *West v. Bergland,* 611 F.2d 710, 715 (CA8 1979), cert. denied, 449 U.S. 821, 101 S.Ct. 79, 66 L.Ed.2d 23 (1980).  Here, the administrative remedy would be wholly inadequate and impractical.  The Florida Commission on Human Relations cannot grant class-wide injunctive relief to Plaintiff and all those persons similarly situated.  It would be impractical to require Plaintiff

and all putative class members to file a claim first with the commission before proceeding with their claims in this Court.  *See State ex rel. Dept. of Gen. Services v. Willis*, 344 So. 2d 580, 590 (Fla. 1st DCA 1977).

### 4.  <u>PLAINTIFFS STATE A VALID CLAIM FOR UNJUST ENRICHMENT</u>

Under Florida law, Plaintiff must establish four elements to recover unjust enrichment: 1) plaintiff has conferred a benefit on the defendant; 2) defendant has knowledge of the benefit; 3) defendant accepts and retains the benefit conferred; and 4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value. *Merle Wood & Associates, Inc. v. Trinity Yachts, LLC,* 714 F.2d 1234, 1237 (11th Cir. 2013); *see also Media Services Group, Inc. v. Bay Cities Communications, Inc.* 237 F. 3d 1326, 1330-31 (11th Cir. 2001) (internal citations omitted). Plaintiff has properly alleged he has conferred a benefit on the defendant and that Defendant voluntarily accepted and retained the benefit conferred.  (*FAC* ¶ 112.).

Defendant's position is that the fourth element of the claim is not satisfied because Plaintiff received value for any payments be made to Defendant.  (Dkt. 54, Def. Mot., pp. 23-24), *citing Pincus v. Am. Traffic Sols., Inc.*, 333 So. 3d 1095 (Fla. 2022). The *Pincus* decision is easily distinguishable and does not bar Plaintiff's unjust enrichment claim. In *Pincus*, the plaintiff filed a class action lawsuit against American Traffic Solutions ("ATS") stemming from the company's charging of a five percent convenience fee to process payments for red light camera citations. *See Pincus*, 333 So.3d at 1096. The Court held that even if the collection of the fee violated Florida

law, ATS's retention of the fee would not be inequitable because Pincus received adequate consideration in exchange for the privilege to pay by credit card. *Id.* at 1097.

In the instant case, there is no adequate consideration through a bargained-for-exchange. There cannot be consideration *at all* if it is premised upon an act that is itself a violation of the law. *State Farm Mut. Auto. Ins. Co. v. Physicians Grp. of Sarasota, LLC*, 9 F.Supp.3d 1303, 1312 (M.D. Fla. 2014) ("…Florida law supports a cause of action for unjust enrichment upon a defendant's acceptance and retention of a benefit 'that it is not legally entitled to receive in the first place'") (*citing State Farm Fire & Casualty Co. v. Silver Star Health and Rebab*, 739 F. 3d 579 (11th Cir. 2013). There is no benefit conferred unrelated to the alleged illegal activity. There was no bargained-for-exchange – because of their disability, Plaintiffs had no choice other than paying more.

The California cases cited by Starbucks are equally unpersuasive Chaix is not asking for compensation because the coffee was too hot. She is asking for compensation because she paid an illegal surcharge. Defendant did not give adequate consideration for the illegal surcharge, which was the only benefit conferred on Defendant. It would be inequitable for the Defendant to retain the surcharge without providing any additional value to Plaintiff. Plaintiffs have properly pled a cause of action for unjust enrichment.

## IV.   <u>CONCLUSION</u>

Plaintiffs respectfully request that Defendant's motion to dismiss be denied. Alternatively, the Court grant should grant Plaintiffs leave to amend their Complaint.

Dated: October 26, 2023

Respectfully Submitted,

s/Keith L. Gibson
**Keith L. Gibson, Esq.**
(Admitted *Pro Hac Vice*)
490 Pennsylvania Avenue, Suite 1
Glen Ellyn IL 60137
Telephone: (630) 677-6745
Email: keith@keithgibsonlaw.com

Bogdan, Enica, Esq.
FL Bar No.: 101934
66 West Flagler St., Ste. 937
Miami, FL 33130
Telephone: (305) 306
Email: bogdan@keithgibsonlaw.com

Rachel L. Soffin, Esq.
Milberg Coleman Bryson Phillips Grossman PLLC
FL Bar No. 18054
3833 Central Ave.
St. Petersburg, FL 33713
Telephone: (865) 247-0080
rsoffin@milberg.com

*Counsel for Plaintiffs and the Putative Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 26, 2023, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification to all counsel and parties of record in this case.

October 26, 2023

/s/Keith L. Gibson
**Keith L. Gibson, Esq.**